**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

JOYCE MARIE MOORE, ET AL.                    CIVIL ACTION

VERSUS                                       NO. 65-15556

TANGIPAHOA PARISH SCHOOL BOARD,              SECTION "B"(1)
ET AL.

<u>ORDER AND REASONS</u>

Before the Court are defendant Tangipahoa Parish School Board's ("the Board" or "TPSB") "Motion for Stay" (Rec. Doc. 1354), "Motion to Expedite Consideration for Stay" (Rec. Doc. 1356), and "Motion for Relief" related to the Court Compliance Officer's ("CCO") Interim Reports. (Rec. Doc. 1359). Plaintiffs filed no responses to any of the above-referenced motions. However, the CCO and the Chief Desegregation Implementation Officer ("CDIO"), following this Court's prior Order, filed memoranda in response to the Motion for Stay. Rec. Docs. 1362, 1372. The TPSB then filed a Reply to their responses. Rec. Doc. 1377. For the reasons outlined below,

**IT IS ORDERED** that the Motion to Expedite Consideration of the Motion to Stay is **DISMISSED AS MOOT.**

**IT IS FURTHER ORDERED** that the Motion to Stay is **DENIED.**

**IT IS FURTHER ORDERED** that the Motion for Relief related to the CCO's reports is **GRANTED AS UNOPPOSED.** Those reports (Rec. Docs. 1349, 1357) shall hereby be filed under seal.

1

## I.    FACTUAL BACKGROUND

The present motions derive from this Court's Order and Reasons denying the Board's Motion for Approval of Appointment of Chief Desegregation Officer. Rec. Doc. 1325. Instead of approving the Board's appointment of Lawrence Thompson as CDIO, this Court ordered the appointment of Andrew Jackson as CDIO upon the recommendation of the CCO and with the support of Plaintiffs. Rec. Doc. 1325 at 6-7. The Board appealed that Order and now seeks a stay pending the decision of the United States Court of Appeals for the Fifth Circuit.

The Board maintains that a stay of Jackson's appointment is necessary because it has been unable to comply with its obligations under the desegregation order due to Jackson's alleged failure to report to work and the CCO's alleged interference with the relationship between the Board and Jackson. Rec. Doc. 1354-1 at 1. More specifically, the Board takes issue with the CCO's position that the CDIO is not a Board employee but, rather, solely under the supervision of the CCO. Rec. Doc. 1354-1 at 2. Based on the CCO's stance with respect to the CDIO position, the Board claims that it cannot fulfill its obligations and that irreparable harm will continue to occur absent a stay. Rec. Doc. 1354-1 at 2-3.

The CCO and CDIO's response memoranda present an altogether different picture. They contend that Jackson is ready and willing

to fully function as the CDIO but claim he cannot due to the Board's failure to cooperate. Rec. Doc. 1362 at 3. However, they maintain that Jackson has been working to the best of his ability, despite the circumstances, at the direction of the CCO. *See* Rec. Doc. 1362 at 14-15. Finally, the CCO and CDIO present evidence that the Board continues to employ Lawrence Thompson and continues to use him to fulfill the CDIO's duties, allegedly demonstrating the Board's intent to defy this Court's Order appointing Jackson. *See* Rec. Docs. 1362, 1372.

## II. **DISCUSSION**

### a. **Motion for Stay**

To obtain a stay pending appeal, a party must first move for such a stay in the district court. Fed. R. App. P. 8(a). "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks and citations omitted). Four factors govern: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id*. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776

(1987)). The first two factors are the most critical. *Nken*, 556 U.S. at 434. The dispositive factor in this case is the second—irreparable injury.

The Board provides two primary arguments supporting its claim of irreparable injury. First, the Board argues that the current positions of the CCO and the CDIO regarding the CDIO's role are making it impossible to implement the Court's orders and to fulfill its obligations under the desegregation Order. Secondly, they argue that, even if Jackson were to show up to work and perform his duties as required under the applicable job description, he would be ineffective due to his lack of experience and training as well as his bias as a relative of named Plaintiffs.

Defendant's contention that it is currently unable to fulfill its obligations under the desegregation order is perplexing. *See* Rec. Doc. 1354-1 at 2 (arguing that a stay is necessary in order for the "Board to continue to comply with its desegregation obligations under the standing orders of this Court.") It appears that the Board has simply maintained the status quo since this Court ordered that Jackson assume the role of CDIO. The record before the Court demonstrates that the Board has kept Lawrence Thompson in the role of CDIO,[1] meaning the Board is functioning in

---

[1] *See generally* Rec. Docs. 1362, 1372. *See also* Rec. Doc. 1354-1 at 14-15 ("Thompson . . . has been performing the CDIO duties for months . . . . If Pastor Jackson must assume the position, with the possibility that the Court's order appointing him will be reversed, the District must release Mr. Thompson.").

the exact capacity it desires. If that is causing irreparable injury, then the Board is contradicting its own argument that Thompson is the best candidate for the job. The Board also needs to recall that it, along with Plaintiffs, initially proposed, and the Court adopted by written order, the creation of the CDIO position, along with tenure and conditions.

To the extent that the Board's irreparable injury argument rests on its inability to comply with this Court's Order and Reasons appointing Jackson as CDIO, such injury is easily reparable. Both Jackson and the Board insist that they are ready and willing to comply with that order. *See* Rec. Docs. 1354-1, 1362. The problems and miscommunications between Jackson, the Board, and the CCO seemingly revolve around the exact role of the CDIO following his appointment order.

In the appointment order, the Court discussed the Board's motion to modify the CDIO's job description. However, the Court rejected the proposed modifications. Rec. Doc. 1325 at 5-6. While the Court emphasized the importance of maintaining the CCO's role as one of the individuals to whom the CDIO reports, the Court did not enlarge the CCO's role with respect to supervision of the CDIO. Notably, the Defendants are under the impression that the CCO is treating the CDIO has his own employee, perhaps under the mistaken belief that the Court adopted his proposed job description. *See* Rec. Doc. 1286-6. However, the Court never adopted the CCO's

revised job description, which was included within his annual report filed in July 2015. The only active job description regarding the CDIO position is the original one. Rec. Doc. 703-1 at 5-6. Under that job description, the CDIO is still required to report to both the Superintendent of Schools and the CCO. Rec. Doc. 703-1 at 5. Though both the Superintendent and the CCO play a role in supervising the CDIO, this Court has not equivocated on the issue of who employs the CDIO—the CDIO remains an employee of the Tangipahoa Parish School Board. *See* Rec. Doc. 710 at 1. Finally, the CDIO position remains a full-time position requiring a full-time commitment. If any confusion remains about the CDIO's function, or if disputes arise concerning the CDIO's conditions of employment, the parties may submit those issues to the Court for resolution.

The only manner in which this Court strayed from the original job description was by appointing a CDIO, Jackson, who does not possess a Masters or Doctorate degree in Organizational Leadership. Rec. Doc. 703-1 at 5. Despite this fact, the Court found that Jackson could serve the Board appropriately. That finding is supported by the CCO's endorsement as well as the Plaintiffs' backing. Furthermore, Defendants cannot fairly claim that Mr. Jackson is an ineffective CDIO, because he has not received the opportunity to function fully in that role. The Board is purely speculating about his ability to perform the job's

6

functions. Speculation regarding potential ineffectiveness does not demonstrate irreparable injury. The only point raised by the Board that may be cause for concern is the relationship of Jackson to the named Plaintiffs in this matter.

The Board's Motion claims that Jackson was married to the sister of Joyce Marie Moore, the named Plaintiff. Rec. Doc. 1354-1 at 22. Further, the Board claims, on information and belief, that Jackson's brother is married to Joyce Marie Moore, making Jackson her brother-in-law. Rec. Doc. 1354-1 at 22. This is the first the Court has heard of any such relationship. If, as alleged, Jackson's familial relationships truly raise legitimate questions regarding his independence and impartiality in this matter— particularly in light of this Court's appointment of him based on the CCO's claim that his independence would prove beneficial—then the Board may file a motion for reconsideration of his appointment under the appropriate Rule of Federal Civil Procedure. However, based on the record and information presently before this Court, the Board has failed to demonstrate that denial of a stay would cause irreparable injury. Accordingly, the Motion for Stay must be denied.

**b. Motion for Relief Related to CCO's Interim Reports**

The Board filed the present Motion seeking a court order (1) striking the subject reports from the Court's docket and ordering the reports be re-filed under seal or submitted to the Court and

parties without filing; and (2) striking all matters in the subject reports regarding the CDIO and ordering that any such matter be addressed in memoranda regarding the Motion to Stay. Rec. Doc. 1359-1 at 3. Alternatively, the Board urges the Court to provide time for a response to those orders if they are to be adopted by the Court or considered without striking information regarding the CDIO. Rec. Doc. 1359-1 at 3.

This Court set the Motion for submission on March 9, 2016, requiring any response memoranda to be filed no later than March 3, 2016. Rec. Doc. 1363. On March 3, 2016, the CCO filed a supplemental brief concerning the Motion to Stay but made no mention of the Motion for Relief related to his interim reports. *See* Rec. Doc. 1371. Thus, the motion is deemed to be unopposed. It further appearing to the Court that the motion has merit, the interim reports shall be filed under seal. However, the Court, at this point, sees no need to strike any portion of the reports considering the Motion for Stay has been resolved without reliance thereupon.

## III. <u>CONCLUSION</u>

Based on the foregoing,

**IT IS ORDERED** that the Motion for Stay is **DENIED.**

**IT IS FURTHER ORDERED** that the Motion to Expedite Consideration of the Motion for Stay is **DISMISSED AS MOOT.**

**IT IS FURTHER ORDERED** that the Motion for Relief related to the CCO's Interim Reports is **GRANTED AS UNOPPOSED.** A motion for reconsideration of this order (granting the motion for relief as unopposed) based on the appropriate Federal Rule of Civil Procedure, if any, must be filed within thirty (30) days of this Order. The motion must be accompanied by opposition memoranda to the original motion.

Because such a motion would not have been necessary had timely opposition memoranda been filed, the costs incurred in connection with the motion, including attorney's fees, will be assessed against the party moving for reconsideration. *See* FED. R. CIV. P. 16, 83.  A statement of costs conforming to Local Rule 54.3 shall be submitted by all parties desiring to be awarded costs and attorney's fees no later than eight (8) days prior to the noticed submission date of the motion for reconsideration.

New Orleans, Louisiana, this 16th day of March, 2016.


_____
UNITED STATES DISTRICT JUDGE