UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOYCE MARIE MOORE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 65-15556** |
| **TANGIPAHOA PARISH SCHOOL BOARD, ET AL.** | **SECTION "B"(1)** |

### ORDER AND REASONS & RESPONSE TO CIRCUIT PANEL

Before the Court is a "Motion for Relief from Order Appointing Chief Desegregation Implementation Officer" under Rule 60(b) of the Federal Rules of Civil Procedure, filed by the Tangipahoa Parish School Board ("Defendant"). Defendant also filed a "Motion for Indicative Ruling" under Rule 62.1(a)(3) asking this Court to state that it would grant the above-referenced motion if the United States Court of Appeals for the Fifth Circuit were to remand the pending appeal for that purpose. Rec. Doc. 1384. On June 22, 2016, this Court granted the motion for an indicative ruling, having found that a substantial issue appeared to exist, and simultaneously held in abeyance the motion for relief under Rule 60(b). Rec. Doc. 1409. On September 7, 2016 the Fifth Circuit remanded and authorized this Court to rule on the subject motions to determine if the appointed Chief Desegregation Implementation Officer ("CDIO"), Andrew Jackson, has an actual or potential conflict of interest that would prohibit him from holding that office. Rec. Doc. 1428 at 2. The Circuit panel also sought

1

additional findings to explain the selection of the current CDIO over the one formerly proposed by Defendant. For the reasons outlined below,

**IT IS ORDERED** that Defendant's motion for relief and reconsideration relative to the CDIO position is **DENIED**.

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The parties first sought the establishment of the CDIO position in 2008 to accomplish "the internal task of overseeing implementation of [the] court's orders . . . ." Rec. Doc. 704 at 1. This Court granted the parties' joint motion to create the position and noted that the CDIO "shall be under the direct supervision of the superintende[nt] of schools and the court's compliance officer ["CCO"]. . . ." Rec. Doc. 710 at 1. The Order further explained that the CDIO would coordinate and oversee all aspects of the implementation of the court's orders on a day-to-day basis within the school system and that it would be a full-time, year-round position. *Id.*

Defendant sought approval from the Court for each new CDIO appointment, even though no order explicitly requires approval from either the Court or Plaintiffs. *See* Rec. Doc. 1308-1 at 1-2. In 2015, when the previous CDIO, Lionel Jackson, informed Defendant that he intended to remain on sick leave until he retired at the end of the year, Defendant assigned the CDIO's duties to Lawrence Thompson. *Id.* at 2. In July 2015, as part of his annual report,

however, the CCO recommended Andrew Jackson for the position. Rec. Doc. 1286 at 18. In motions filed in August 2015, Defendant moved for the elimination of the CDIO position, approval of a revised job description for the CDIO, or, alternatively, approval for the appointment of Lawrence Thompson as CDIO. Rec. Docs. 1308, 1309. In response, Plaintiffs urged the Court to appoint Andrew Jackson as CDIO, per the recommendation of the CCO, because Mr. Thompson did not have the support of the African American community. Rec. Doc. 1316 at 1-2. On December 3, 2015, this Court denied Defendant's motions to eliminate the CDIO's position and to modify the CDIO's job description. Rec. Doc. 1325 at 5-6. In the same Order, the Court denied the appointment of Mr. Thompson and ordered the appointment of Andrew Jackson, noting that the appointment of a person who is a not a former employee of the school system "would bring a level of independence and impartiality that would better facilitate achieving unitary status, which is the ultimate and primary goal." *Id.* at 7.

Defendant then appealed that Order and Reasons on December 30, 2016. Rec. Doc. 1336. Following the Notice of Appeal, Defendant filed a motion for a stay of the order appointing Andrew Jackson pending the appeal, which this Court denied. Rec. Docs. 1378, 1354. It was in that motion, filed on February 17, 2016, that Defendant first raised the issue of Jackson's potential conflict of interest based upon his familial relationships—approximately seven months

3

after Defendant was first notified of the CCO's recommendation of Andrew Jackson for the position. *See* Rec. Docs. 1286, 1354-1.

The Order and Reasons denying the motion for a stay noted that the alleged familial relationship between Andrew Jackson and the named Plaintiffs in this matter could be a cause for concern. Rec. Doc. 1378 at 7. Accordingly, the Court further stated that Defendant could file a motion for reconsideration of Jackson's appointment if his familial relationships truly raised questions about his independence and impartiality. *Id*. Defendant thereafter filed its motion for relief under Rule 60(b). Rec. Doc. 1382. Plaintiffs timely filed an opposition memorandum. Rec. Doc. 1390.

In its original motion, Defendant argued that the Court should reverse its decision appointing Jackson because (1) he has a conflict of interest based on a close familial relationship with the named plaintiffs (by what Defendant questionably claimed was newly-obtained evidence); (2) he has a conflict of interest due to his leadership role in the Ministerial Alliance, which took a significant interest in the case; (3) he lacks the requisite skills and education; and (4) his relationship with the CCO prevents him from properly fulfilling his duties. Rec. Doc. 1382-2 at 12-18. However, in our June 22, 2016 Order, this Court found that the latter three arguments were not properly before the Court. Rec. Doc. 1409 at 7. Nonetheless, the first argument was found to be sufficient grounds for reconsideration of the appointment under

Rule 60(b)(2) (stating that a court may relieve a party from an order based upon "newly discovered evidence that, with reasonable diligence, could not have been discovered" earlier"). *Id.* at 8. Given the pending appeal, however, this Court merely determined that there was a substantial issue under Rule 62.1 and therefore granted Defendant's motion for an indicative ruling. *Id.* at 1, 9.

On September 7, 2016, the Fifth Circuit remanded "for the limited purpose of allowing the district court to rule on the matter identified in its indicative order" and further instructed this Court to "make additional findings to explain its appointment of Mr. Jackson instead of Mr. Thompson." Rec. Doc. 1428 at 2. This Court promptly ordered supplemental memoranda from the parties. Rec. Doc. 1429. The parties timely filed supplemental responses. *See* Rec. Docs. 1431, 1432, 1433.

## II.  THE PARTIES' CONTENTIONS

In the CCO's 2015 annual report, he explained that Andrew Jackson is well known in the community, is an established pastor, has a bachelor's degree in criminal justice, and served as president and principal of Reynolds Institute (a residential facility for minors who had been adjudicated delinquent). Rec. Doc. 1286 at 10. Plus, in his position at Reynolds, the CCO noted that Andrew Jackson regularly interacted with the Tangipahoa Parish School System, from which the institute directly received

5

funds. *Id.*[1] Mr. Jackson's resume was also attached to the report. Rec. Doc. 1286-5.

In their original motion, Defendant opposed Mr. Jackson's appointment and argued that he verbally confirmed his previous marriage to Catherine Moore (the alleged daughter of M.C. Moore and sister of named class representative Joyce Marie Moore), with whom he has one child. *Id.* at 8, 12. Defendant also claimed that it had obtained evidence of a certificate of marriage between one Jessie Jackson, Jr. (allegedly a relation to Andrew Jackson) and Joyce Marie Moore (the daughter of M.C. Moore and on whose behalf he filed suit). Rec. Doc. 1382-2 at 8 n. 26. According to Defendant, Andrew Jackson would neither confirm nor deny the relationship. *Id.*

In response, Plaintiffs noted that Mr. Jackson has never been employed by Defendant and accordingly argued that "as an independent reviewer of facts and complaints against the board, he would be unbiased." Rec. Doc. 1316 at 1. Mr. Thompson, on the other hand, is a retired administrator, principal, coach, and teacher, who purportedly does not have the support of the African American community. *Id.* at 2.

In "Plaintiffs' Memorandum Regarding the Appointment of the Chief Desegregation Implementation Officer," filed in September

---

[1] In this report, the CCO also recommended modifications to the CDIO's job description. Rec. Doc. 1286 at 18-19. The Court did not adopt these changes.

6

2016, Plaintiffs state that Defendant's claims of a conflict are a "pretext" and that Defendant is opposing Andrew Jackson's appointment because he, unlike their proposed candidate, would not be under their control. Rec. Doc. 1432 at 3. Plaintiffs admit that Andrew Jackson was married to Catherine Moore from 1969 to 1975, at which time they divorced. *Id.* Plaintiffs nevertheless contest Defendant's assertion that Andrew Jackson is the brother of Jessie Jackson, Jr.[2]

Defendant responds by noting that the CDIO is supposed to implement the Board's obligations on its behalf and is therefore an employee of Defendant who "report[s] to both the Superintendent and the CCO." Rec. Doc. 1433 at 6 n. 28 (citing Rec. Doc. 1378 at 6). In this role, Defendant argues that the CDIO must "receive confidential and privileged information necessary to the performance of his duties" and that he must "be a trusted employee committed to work as an advocate of the Board's implementation of its obligations . . . ." *Id.* at 6. Further, even though Andrew Jackson and Catherine Moore divorced in 1975, they have a daughter together who is the niece and granddaughter of the respective Plaintiffs, and Defendant argues, in a vague and conclusory fashion, that Mr. Jackson could be influenced by his daughter or his ties to his daughter's family. *Id.* at 7. Defendant also claims

---

[2] Specifically, Plaintiffs state that "defendants allege that Andrew Jackson has a brother, Jesse [sic] Jackson, allegedly married to a Moore descendant. The information is erroneous." Rec. Doc. 1432 at 3.

7

that Plaintiffs have not provided any factual documentation to rebut the conclusory assertion that Andrew Jackson is related to Jessie Jackson, Jr. *Id.* at 8. Notably absent since Jackson's service as CDIO are any complaints from Defendant about his impartiality in decision making or service.

### III. LAW AND ANALYSIS

Under Federal Rule of Civil Procedure 60(b), the court may relieve a party from an order if, among other reasons, there is "newly discovered evidence, that with reasonable diligence, could not have been discovered" at an earlier time. FED. R. CIV. P. 60(b)(2). In this case, the Board presents newly-discovered evidence that allegedly shows Jackson's relationship to the named plaintiffs. That evidence consists of (1) Jackson's confirmation of his previous marriage to Catherine Moore (the daughter of named plaintiff M.C. Moore), with whom he has a child; and (2) an alleged relationship between Andrew Jackson and Jessie Jackson, Jr., who was purportedly married to Joyce Marie Moore (the daughter of named plaintiff M.C. Moore and on whose behalf he filed suit). Rec. Doc. 1382.

In support of their motion for reconsideration, Defendant cites to *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180 (1963) for the proposition that Mr. Jackson should not be appointed simply because of the "appearance of impropriety that arises from the established familial ties with the Plaintiffs . . . ." Rec.

8

Doc. 1433 at 6. In *Capital Gains Research Bureau, Inc.*, the Supreme Court noted that conflicts of interest must be avoided not simply because there may be actual violations of trust relations, but also to remove any temptation to violate them. 375 U.S. at n. 50. Defendant references that "an impairment of impartial judgment can occur in even the most well-meaning men when their personal economic interests are affected by the business they transact . . . ." Rec. Doc. 1382-2 at 11 (quoting *United States v. Miss. Valley Generating Co.*, 364 U.S. 520, 549 (1951)).

Defendant generally contends that Jackson's family ties to the plaintiffs in this matter present unfairness because he is in a position of trust with the opposing party in "litigation adverse to his [adult] daughter's immediate family['s] interests." Rec. Doc. 1382-2 at 12. Notably, though, Defendant does not explain the parameters of this supposed "position of trust" nor provide specifics as to how Jackson's "position of trust" has been violated or could actually or foreseeably harm them in this litigation. In other words, this Court is wholly unaware of how Mr. Jackson's alleged, and not proven, conflict of interest could foreseeably result in any temptation to violate a supposed trust relationship with Defendant. The purpose of this litigation is to desegregate the schools in the Tangipahoa Parish School System and the primary roles of the CCO and CDIO are, and should be, to ensure this desegregation.

It appears that Andrew Jackson was once married to Catherine Moore, who is a member of a named plaintiff's immediate family. However, they were married from 1969 to 1975, a period of 6 years more than 40 years ago. Even though they had a child, this Court does not find that Mr. Jackson's daughter's mother's relationship with the named plaintiffs creates a real or potential conflict of interest for Mr. Jackson or even that it reasonably creates the appearance of impropriety.[3]

As to another conclusory allegation, there is evidence that a man named Jessie Jackson, Jr. was at one time married to Joyce Marie Moore (*see* Rec. Doc. 1382-1 at 11-13), but there is no evidence that Jessie Jackson, Jr. is in any way related to Andrew Jackson. To the contrary, Plaintiffs specifically argue that there is no such relation. Rec. Doc. 1432 at 3. Without evidence that these two individuals are actually related, this Court cannot find that there is a relationship that could reasonably implicate a conflict of interest.

In the joint motion for the creation of the CDIO, the parties explained that the CDIO's role was to "begin the internal task of overseeing implementation of [the] court's orders and ensuring

---

[3] In fact, it would likely create the appearance of propriety. To an outsider, and to this Court, it would seem as though the interests of the CDIO and Plaintiffs should often align, because both are primarily seeking the desegregation of the school system. As later noted in this Order, in the joint motion to create the CDIO, the parties explained that his/her purpose was to "demonstrate to the court <u>and to those on whose behalf the instant lawsuit was filed</u> its good faith commitment to" the court's orders and the law. Rec. Doc. 704 at 1 (emphasis added).

compliance with applicable laws and constitutional mandates." Rec. Doc. 704 at 1. He or she was to "oversee all aspects of the implementation of the court's orders, including . . . the provision of ongoing reports to the court's compliance officer, and that such person be under the direct supervision of the superintendent of schools, and the court's compliance officer and be responsible to provide all requested reports and information to the court's compliance officer." *Id.* at 2. The Court's Order specifically stated that the CDIO "shall be under the direct supervision of the superintende[nt] of schools **and the court's compliance officer** . . . ." Rec. Doc. 710 at 1 (emphasis added). Thus, from the beginning, the CDIO has answered to both Defendant and the CCO. Even though the CDIO is employed by Defendant, his or her loyalties rest upon implementing lawful compliance with Court orders and law, designed to achieve unitary status for this school system. The parties explicitly stated that the purpose of the CDIO was to "demonstrate to the court and to those on whose behalf the instant lawsuit was filed its good faith commitment to the whole of the court's orders and to those provisions of the law and the constitution that were the predicate for judicial intervention in the first instance . . . ." Rec. Doc. 704 at 1. That purpose has not changed, nor should it.

The parties have heretofore agreed upon a process for appointing a CDIO; the *de facto* procedure thus far has been for

11

Defendant to select someone and then seek approval for the selection from this Court. *See* Rec. Doc. 1325 at 7. For the first time in seven years, however, this Court considered, and found persuasive, Plaintiffs' argument that there is less risk of bias if an outsider is appointed to the position. *Id.* Ultimately, this Court determined that "[t]he appointment of Mr. Jackson would bring a level of independence and impartiality that would better facilitate achieving unitary status, which is the ultimate and primary goal." *Id.* Mr. Thompson's previous employment with Defendant weakens the appearance of neutrality that a person in the CDIO's position should promote and the need at this critical stage for someone like Mr. Jackson to help facilitate a reasonable conclusion of this decades-old desegregation case.

Mr. Jackson is an independent and well-respected member of the community who is not only a leader in the church, but a qualified administrator. He spent sixteen years managing an organization dedicated to helping at-risk youth. Rec. Doc. 1286-5 at 2. In that role, he worked directly with staff in the Tangipahoa Parish School System. Rec. Doc. 1286 at 10. After the previous CDIO announced his retirement, the CCO noted that he was principled, dedicated, and conscientious and that he would be missed; the CCO then gave "significant thought and reflection to who would best serve the Court and parties as the next [C]DIO,"

12

and he recommended Andrew Jackson. Rec. Doc. 1286 at 10. This Court agrees with that recommendation for reasons given then and now.

IV. **CONCLUSION**

For the reasons outlined above,

**IT IS ORDERED** that the motion for relief/reconsideration is **DENIED,** with the respectful hope that the foregoing answers the issues duly raised by the Circuit panel.

New Orleans, Louisiana, this 18th day of October, 2016.

_____
SENIOR UNITED STATES DISTRICT JUDGE