**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **M.C. MOORE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 65-15556** |
| **TANGIPAHOA PARISH SCHOOL BOARD, ET AL.** | **SECTION "B"(1)** |

<u>**ORDER AND REASONS**</u>

Before the Court is the Tangipahoa Parish School Board's "Motion for Reconsideration of Facilities Order." Rec. Doc. 1475. Plaintiffs filed an opposition. Rec. Doc. 1489. For the reasons discussed below,

**IT IS ORDERED** that the motion (Rec. Doc. 1475) is **DENIED**.

<u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

This motion to reconsider is part of a long-running school desegregation case, the facts of which have been discussed at length in the underlying Order and Reasons. *See* Rec. Doc. 1472. To recap the most relevant history, the Board is under a desegregation consent decree with respect to, *inter alia*, its facilities. *See* Rec. Docs. 876, 956, 1264. In April 2017, the Board moved for unitary status in the area of facilities. *See* Rec. Doc. 1455. Plaintiffs filed an opposition (Rec. Doc. 1456) and the Board filed a reply (Rec. Doc. 1462). In July 2017, the Court granted provisional unitary status in the area of facilities, subject to a two-year probationary period during which the Court Compliance Officer will conduct semiannual compliance reviews. *See* Rec. Doc.

1472. The Board subsequently filed the instant motion for reconsideration. Rec. Doc. 1475.

**LAW AND ANALYSIS**

The Board seeks reconsideration of the Order granting provisional unitary status in the area of facilities (Rec. Doc. 1472) under Federal Rule of Civil Procedure 59(e). *See* Rec. Doc. 1475-1 at 3-4. "Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). "A Rule 59(e) motion . . . is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before" the order was issued.[1] *Id.* at 478-79. As a result, the "extraordinary remedy" available under Rule 59(e) "should be used sparingly." *Id.* at 479.

First, the Board argues that the provisional grant of unitary status in the area of facilities, with a two year period of continued supervision, is a "manifest legal error" stemming from incorrect application of *Youngblood v. Bd. of Pub. Instruction*, 448 F.2d 770 (5th Cir. 1971). *See* Rec. Doc. 1475-1 at 4-9. The Board asserts that it is entitled to full unitary status in the area of facilities, without any further supervision, under an

---

[1] Plaintiff's motion is properly analyzed under Federal Rule of Civil Procedure 59(e) because it was filed within twenty-eight days after the Court provisionally granted unitary status in the area of facilities. *See Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 400 (5th Cir. 2003).

2

"incremental approach" to resolving desegregation cases. *See* Rec. Doc. 1475-1 at 5-9. The Board's current position is undermined by the references in its motion for unitary status to "the three (3) year period of [unitary status] required by this jurisdiction" before a defendant is released from court supervision. *See* Rec. Docs. 1455 at 1, 1455-1 at 25. This is the same period of time that the Board now argues is inapplicable under the incremental approach. Moreover, none of the cases cited by the Board hold that the Fifth Circuit's incremental approach is inconsistent with imposing a temporary probationary period under *Youngblood*.

In fact, quite the opposite is true.[2] In *Overton*, the district court imposed a probationary period under *Youngblood* before finding that the school district had reached unitary status. *See United States v. Overton*, 834 F.2d 1171, 1173-74, 1177 (5th Cir. 1987). The same occurred in *Flax v. Potts*, 915 F.2d 155, 157 (5th Cir. 1990). And in *United States v. Midland Indep. Sch. Dist.*, the Fifth Circuit merely held that it was not an abuse of discretion to grant unitary status without a final hearing when a district court has otherwise "develop[ed] intimate knowledge of the school

---

[2] One of the cases cited by the Board does not actually involve the termination of a desegregation order and simply discusses the incremental approach to achieving unitary status. *See Hull v. Quitman Cty. Bd. of Educ.*, 1 F.3d 1450, 1454 (5th Cir. 1993) ("This appeal does not present exactly th[e] [unitary status] issue, for [defendant] has not sought to terminate its desegregation case."). Another case does not address the *Youngblood* question because the decision under review is from the Eleventh Circuit. *See Freeman v. Pitts*, 503 U.S. 467 (1992). Moreover, in *Freeman*, the district court found that the school district had reached unitary status with respect to student assignment seventeen years prior to the end of judicial supervision. *Id.* at 480, 496.

3

district's operations . . . [and] attain[ed] the same substantive goals achievable by using the *Youngblood* procedures." 48 F. App'x 102, *1 (5th Cir. 2002). *Midland* does not prohibit a district court from imposing a probationary period under *Youngblood* before fully releasing a defendant from part of a desegregation order. *See id.* The two-year probationary period imposed in the Order and Reasons (Rec. Doc. 1472) is consistent with Fifth Circuit doctrine and there is no basis for reconsideration under Rule 59(e).

Second, the Board argues that the Court improperly decided to impose the two-year probationary period by imputing the bad faith comments of a single school board member to the whole school board. *See* Rec. Doc. 1475-1 at 9-13. But the Court did not find that the school board acted in bad faith. The Court observed that the school board had complied with court orders and concluded that the school board had "minimally yet sufficiently[] demonstrated a commitment to desegregation." *Id.* at 8, 13-14. In recognition of these efforts and guided by Fifth Circuit doctrine, the Court granted provisional unitary status in the area of facilities. *See id.* at 15-16. But because the board must continue to act in good faith during the probationary period, the Court again highlighted its lingering concern that at least one member of the school board had expressed a desire to reverse the board's hard work toward achieving desegregation once full unitary status was achieved. *See id.* at 15-16.

4

Third, the Board objects (*see* Rec. Doc. 1475-1 at 13-15) to the second to last sentence of the order (*see* Rec. Doc. 1472 at 16), which reads, "The CCO is authorized to take reasonable measures to enforce compliance with this and related orders as he deems necessary." The Board argues that this sentence impermissibly expands the COO's authority in violation of Federal Rule of Civil Procedure 53. *See* Rec. Doc. 1475-1 at 13-15. But the sentence does not alter the CCO's authority. Rather, it simply reiterates the COO's mandate to "ensure compliance with the orders of the court . . . [by] [(1)] monitor[ing] and insur[ing] that the letter and spirit of case law and orders of the court are followed regarding school board responsibility to desegregate schools and [(2)] ensur[ing] that the court and all parties are informed of any action which may be contrary to the orders of the court." Rec. Doc. 703-1 at 1. Because the Order and Reasons (Rec. Doc. 1472) does not tread new ground with respect to the CCO's authority, reconsideration is inappropriate.

New Orleans, Louisiana, this 20th day of December, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE

5