UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

M.C. MOORE, ET AL.                                CIVIL ACTION

VERSUS                                            NO. 65-15556

TANGIPAHOA PARISH SCHOOL BOARD, ET AL.            SECTION "B"(1)

**ORDER AND REASONS**

The Tangipahoa Parish School Board filed a "Motion for Court Approval of Repairs/Replacement of Football Field Lights at Independence High Magnet School." Rec. Doc. 1540. Though the motion was noticed for submission on July 11, 2018, and indicates that Plaintiffs oppose the expenditure, no timely opposition has been filed. For the reasons discussed below,

**IT IS ORDERED** that the motion (Rec. Doc. 1540) is **GRANTED**.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

According to the Board's motion, "[i]n May 2018, the Board approved a recommendation of the Capital Outlay Committee to seek bids to replace the [Independence High Magnet School] football field light fixtures with new LED light fixtures[.]" Rec. Doc. 1540 at 1. The Board than accepted a bid for the work with a cost estimated at $283,705.00. *Id*. The Board believes that the "construction project is necessary to achieve the overall desired light levels as well as the overall aesthetics and quality of the lighting of the football field at this school." *Id.* at 2.

1

The Board unsuccessfully sought the consent of Lead Settlement and Negotiation Counsel for Plaintiffs. *Id.* The Chief Desegregation Implementation Officer (CDIO) approves of the expenditure. *Id.* After these discussions, the Board filed the instant motion for approval of the expenditure. Rec. Doc. 1540. The motion does not indicate the Chief Compliance Office's position. No timely opposition has been filed.

**LAW AND ANALYSIS**

"Court approval [is] . . . required for repairs to existing school facilities . . . where the cost of the repair exceeds one hundred twenty-five thousand dollars."[1] Rec. Doc. 876 at 25. The desegregation orders mandate that, when the Board makes repairs, the Board must "take affirmative steps to eliminate any remaining vestiges of prior *de jure* segregation[.]" Rec. Doc. 876 at 24; *see also* Rec. Doc. 612 at 2 (noting the parties' "ongoing affirmative duty to ensure that proposed capital expenditures bring about a unitary system and [] prevent reoccurrence of a dual school system"); Rec. Doc. 522-1 at 4 ("[T]he school board[] [has an] affirmative duty to ensure that the proposed construction or improvements assist in bringing

---

[1] Requirements for fundraising and other capital expenditures are contained in other court orders. *See* Rec. Docs. 612, 522-1; *see also* Rec. Doc. 1528.

about a unitary system and prevents recurrence of the dual system.").

In July 2017, the Court provisionally granted unitary status in the area of facilities. *See* Rec. Doc. 1472. "[T]he Court agree[d] with the Board's assertion that the physical facilities at schools previously identifiable as black are largely comparable to the physical facilities at other schools in the system." *Id.* at 11. While unitary status is provisional, the Board remains obligated to ensure that repairs do not allow "recurrence of the dual system." *See* Rec. Docs. 522-1 at 4; 1472 at 15 (explaining need for compliance reviews during provisional period); *see also, e.g.*, *Flax v. Potts*, 915 F.2d 155, 163 (5th Cir. 1990) (explaining that provisional period allows district court to confirm that unitary status has been maintained).

Repair of the lighting at the football field at Independence High Magnet School will not impair the Board's provisional unitary status in the area of facilities. As of the end of the 2016-2017 school year, 60% of the students at Independence High Magnet School were black. *See* Rec. Doc. 1484-19 at 4. This falls within the +/- 15% standard for considering a school to be desegregated because the Board's "student population is roughly 49% black and 51% non-black." *See* Rec. Docs. 876 at 6; 1532 at 4. Therefore, the percentage of black students at Independence High Magnet School is above-average for the district as a whole, but not so high as to

indicate non-compliance with the desegregation orders. The Board's proposed investment in the facilities at a desegregated school is permissible, so long as it does not interfere with the Board's efforts to maintain unitary status in facilities and achieve unitary status with respect to the remaining unresolved *Green* factors—student assignment, faculty assignment, and full unitary status in staff assignment.

New Orleans, Louisiana, this 20th day of July, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE