# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOYCE MARIE MOORE, ET AL.,** | * | **CIVIL ACTION NO : 65-15556** |
| Plaintiffs, | * | |
| | * | |
| **VERSUS** | * | **SECTION "B" (1)** |
| | * | |
| **TANGIPAHOA PARISH SCHOOL BOARD,** | * | **IVAN L. R. LEMELLE** |
| Defendant. | * | **SENIOR DISTRICT JUDGE** |

## ORDER & REASONS

Considering the "Objection of Tangipahoa Parish School Board to Court Compliance Officer's Report and Recommendations Regarding Schellia Robertson's Complaint" (Rec. Doc. 1558),

**IT IS ORDERED** that Tangipahoa Parish School Board's (TPSB) objection is **OVERRULLED**, and that the Court Compliance Officer's (CCO) Recommendations are **AFFIRMED IN PART AND MODIFIED IN PART**;

**IT IS FURTHER ORDERED** that Schellia Robertson, PhD receive the rank and title of Technology Facilitator and the salary and benefits commensurate with the position of Technology Facilitator retroactive to the date of hire of the non-black candidate who was hired for that position; and

**IT IS FURTHER ORDERED** that Dr. Robertson be appointed as Technology Facilitator at the next opening for a Technology Facilitator within TPSB's school system.

Dr. Robertson was one of either twenty-two (22) or twenty-seven (27) applicants for the position of Instructional Technology Facilitator within Tangipahoa Parish School Board's (TPSB)

Technology Department.[1]  When TPSB advertised the job opening, the following were listed as the requisites:  (a)  must hold a valid Louisiana Teaching Certificate, and (b) must have (5) five years of experience in using technology in the classroom.[2]  Dr. Robertson's knowledge, education, skill, experience and training include at least the following attributes;

- Bachelor of Science Degree in Computer Informational Systems.
- Master of Science Degree in Integrated Science &Technology with a Concentration in Computer Science.
- Doctorate Degree in Educational Leadership and Technology.
- Several published articles in conjunction with faculty at Southeastern Louisiana University.
- Twenty-five (25) years teaching experience.
- Level 3 Certified in Computer Science and Computer Literacy.
- Taught at Hammond High Magnet School (Computer Science, Computer Architecture, Introduction to Business Computer Applications, Business Computer Applications and Edgenuity).
- Dr. Robertson's students have achieved a 95% success rate in Microsoft Office proficiency.
- Interim Director of GEAR UP program (affiliated with Southeastern University) from 2006 to 2009.
- Supervised teachers and student workers during her tenure.
- Supervised a significant budget for the GEAR UP program.
- Prepared Annual Performance Reports submitted to the U.S. Dept. of Education in Washington D.C.
- Extensive programming background as evidenced in teaching students at Hammond High Magnet School in using Lab View and LEGO MINDSTORM as well as in building and programming robots.[3]

Although TPSB's advertisement for the position did not indicate that applicants would be screened with a written test, a written test was administered to candidates.  TPSB set 70% as the threshold it used as a minimum score in selecting candidates it chose to interview.  TPSB produced a test on which that Dr. Robertson scored less than seventy (70%) percent.

---

[1] In its submission to the CCO, TPSB averred that 22 applicants were screened with the test, Rec, Doc, 1558-3, p.4. However, in its Objection to the Court, TPSB contends that there were 27 applicants who were screened with the test.  Rec. Doc. Rec. Doc. 1558, pp. 9-10.
[2] Rec. Doc. 1558-1, p. 3.
[3] Rec. Doc. 1558-2.  *See also* Rec. Doc. 1558-4, pp. 16-20 and Rec. Doc. 1558-1.

TPSB chose not to convene an interview committee consistent with the Order at Rec. Doc. 866. It contends that the Instructional Technology Facilitator position is not included within the ambit of Rec. Doc. 866. TPSB proceeded to hire a non-black applicant as the Instructional Technology Facilitator, utilizing some other process other that the one specified by Rec. Doc. 866. Dr. Robertson objected.

The CCO requested briefs from TPSB and class counsel. TPSB provided a brief and other materials, and Class Counsel provided no input whatsoever.[4] Dr. Robertson's complaint to the CCO was two-fold. She complained that shortly prior to advertising the two management positions in its Technology Department, TPSB made changes in job qualifications for both positions.[5] Because Dr. Robertson did not possess the qualifications for either position, she did not apply for either. Despite what the CCO characterized as "extremely curious" modifications in job qualifications and the timing of when the qualifications were changed,[6] because Dr. Robertson did not apply for or otherwise seek either position, the CCO found she lacked standing to assert a challenge. The Court agrees.

Dr. Robertson also complained that she was not interviewed, and a non-black applicant with lesser qualifications than she possesses was selected for the position. TPSB contended that the Instructional Technology Facilitator position is not included within the ambit of Rec. Doc. 866. It argued that it was proper to create a written test to screen applicants, and because Dr. Robertson scored below a threshold that TPSB set, she was not eligible an interview.

---

[4] *Id* at p.1.
[5] The positions are Director of Technology and Assistant Director of Technology. *Id* at p. 3.
[6] The changes lowered the qualifications for the Director position, requiring less education and credentialing that for the Assistant Director. The argument was that the qualification change was affected by the previous administration to fit a specific candidate, in this instance, a non-black candidate. *See id* at pp. 3-4.

After considering the briefs and evidence submitted by TPSB, the CCO found that Rec. Doc. 866 applies to hiring an Instructional Technology Facilitator, observing as follows:

> In its response to Dr. Robertson's complaint, TPSB argues:
>
>> First, the position of Instructional Technology Facilitator does not fall within the categories of "central office administrators or other supervisory positions" subject to the provisions of Order 866. Thus, none of the requirements of Order 866, including but not limited to the advertisement or employment procedure, apply to this position . . .
>
> I find that TPSB's contention that that the position of Technology Facilitator is not included under the auspices of R.Doc. 866 is misplaced. R.Doc. 866 is not limited to "central office administrators or other supervisory positions" as TPSB suggests. The specific relevant language found in R.Doc. 866 provides:
>
>> **IT IS FURTHER ORDERED** that the following procedure to hire principals, supervisors, and administrators shall become effective on the date that this Order is entered into the record:
>>
>> **DIVERSITY GOAL:**
>> When vacancies occur for principals, central office administrators, or other supervisory positions which include but are not limited to directors, supervisors, coordinators, principals, assistant principals and administrative assistants, the school system shall hire or appoint a qualified Black person who has submitted an application to fill them to achieve a diversity goal of 40 percent Black and 60 percent white in each category or to achieve the a percentage of Black school-site administrators that will approximate the percentage of Black students enrolled in the school system as shown in Attachment C to the Desegregation Plan filed by Defendants in this matter, whichever is greater.
>
> It is inappropriate to omit "positions which include but are not limited to directors, supervisors, coordinators, principals, assistant principals and administrative assistants" from the clear language of the Order when citing it. Moreover, the list provided in the Order is *non-exclusive*. The Technology Facilitator job pays more than and requires responsibilities that exceed those of a teaching position. Determining whether a Technology Facilitator is more akin to a coordinator or administrative assistant is unnecessary here. I find that the position is included within the ambit of R.Doc. 866.[7]

---

[7] Rec. Doc. 1558-1, pp. 6-7.

The CCO considered the arguments and justifications TPSB offered in support of its screening test. Rejecting TPSB's arguments, the CCO found as follows:

> [TPSB] contends that it may test individuals to determine their proficiency, but it offers nothing to support that the test it required of applicants accomplishes that goal, much less whether it was an objective measure that would be acceptable under the Orders and Decrees in this case.7 It failed to advise potential applicants that it would require some sort of proficiency testing when the position was advertised. It failed to demonstrate any relationship between the test, job requirements, job description or more importantly the actual functioning of a Technology Facilitator performing the job. It failed to demonstrate that any other system, anywhere, uses the same test, or any test for that matter, to screen applicants. It failed to explain why it was reasonable to require a test of the Facilitator level applicants, yet neither the Assistant Director of Technology nor that person's boss, the Director of Technology, were required to demonstrate any proficiency with the same test. I am unpersuaded by TPSB's arguments.[8]

The CCO found that TPSB failed to comply with the hiring provisions of Rec. Doc. 866 when it failed to convene an interview committee, failed to interview Dr. Robertson and offered this position to a non-black applicant who was not "more qualified" that Dr. Robertson. TPSB timely objected to the CCO's Report and Recommendation, and it provided the Court with extensive briefing and materials.[9] Class Counsel offered no submission or input to the Court, despite an opportunity to do so. Having thoroughly reviewed TPSB's objections, briefing and materials provided, the Court finds that the CCO's evaluation and findings were correct.

As it did in its response to Dr. Robertson's complaint it presented to the CCO, TPSB argues that Technology Facilitator position is not a staff position that is included within the language of Rec. Doc. 866. Also, TPSB contends that it was appropriate to screen applicants with the written

---

[8] *Id.* at p. 7. (footnotes omitted).
[9] Rec. Docs. 1558 (TPSB Objection to CCO Report and Recommendation); 1588-1 (CCO Report and Recommendation); 1558-2 (Dr. Robertson's complaint to CCO); 1588-3 (TPSB submission to CCO); 1558-4 (Declaration and Attachments from Assistant Superintendent Ron Genco); Rec. Doc. 1558-5 (Declaration of Dina Spears, Assistant Director of Technology); and documents submitted under seal per Order at Rec. Doc. 1561, containing the Technology Facilitator Test and Results.

test it used here, and because Dr. Robertson scored lower than 70%, it was entitled to exclude her from an interview. In addition, TPSB contends that the CCO misapplied the "more qualified" standard set forth in Rec. Doc. 866.

A district court reviews a special master's conclusions of law de novo. *See* Fed. R. Civ. P. 53(f)(4) and Rec. Doc. 1503. The Court agrees with the CCO that the Instructional Technology Facilitator position is included within Rec. Doc. 866. The relevant language, "principals, central office administrators, or other supervisory positions which include but are not limited to directors, supervisors, coordinators, principals, assistant principals and administrative assistants" is non-exclusive. Considering the scope of the Instructional Technology Facilitator's job requirements, pay scale and the similarity to other administrative jobs set out in the Rec. Doc. 866, hiring an Instructional Technology Facilitator requires compliance with Rec. Doc. 866.

TPSB submitted a Declaration from Assistant Superintendent Ron Genco, in which Mr. Genco asserts that TPSB does not consider or identify the Instructional Technology Facilitator Position as a supervisory position. Therefore, TPSB has never attempted to comply with Rec. Doc. 866 when hiring persons for that position.[10] How TPSB labels this job is not determinative of whether the Rec. Doc. 866 mandated procedures apply here.

On its face, Rec. Doc. 866 is non-exclusive, to wit: the language "which include but are not limited to . . ."[11] The illustrative list set out in Rec, Doc. 866 references "coordinators" and "administrative assistants." The job description for the Instructional Technology Facilitator has facets and responsibilities that apply to coordinators, assistant administrators and teachers.[12] On

---

[10] Rec. Doc. 1558-4, p. 2.
[11] Rec. Doc. 866 at p.2.
[12] *See* R.Doc. 1558-4, pp. 6-7. If the Instructional Technology Facilitator position is considered a teaching position, then the requisites for hiring teachers would apply. Those requirements are found in the Order contained in Rec. Doc. 876, p.21, sec. 20, referencing Rec.Doc. 876-3, pp. 7-8 (Attachment "F" referenced in Rec. Doc. 876, p. 21, section 20). Those requisites would require hiring a qualified black applicant for the position, absent cause set out in Rec. Doc. 876.

average, the pay scale for the Instructional Technology Coordinator is substantially higher than for teaching positions.[13] Whether the position is more like a coordinator or an administrative assistant is a distinction without a difference for the purpose of TPSB's objection. Prior improper practices by TPSB that limited or precluded qualified black applicants' access to well compensated, skilled administrative position like this one is why remedial measures were required and the Order at Rec. Doc. 866 was entered. TPSB should have convened an interview committee and complied with the other requirements of Rec. Doc. 866.

TPSB's arguments and submission regarding the written screening test it administered fail to justify refusing to interview a qualified black applicant, with a doctorate degree no less, under these circumstances. TPSB submitted a declaration from the Assistant Director of Technology, Ms. Dina Spears in which she discussed screening testing. In her declaration, Ms. Spears states that the screening test is used for the Instructional Technology Facilitator position, but no evidence was offered that it was ever used other than for this specific hiring. In addition, TPSB offers no evidence relative to this test on multiple areas, including:

- Who created the test?

- When was created the test, and has it ever been used before hiring for this specific job?[14]

- Has TPSB or any other school district ever used this specific test, and if so, who and when?[15]

- What standards were applied to the creation of the test?

---

[13] *See* Rec. Doc. 1558-4, pp. 7-9. The Instructional Technology Facilitator position is a highly compensated staff position, with a pay scale at level 14 of 23.
[14] Assistant Superintendent Genco avers that a screening test is used for the Instructional Technology Facilitator, position, but no indication whether it was ever used prior to hiring for this position is offered, much less the dates when it had been used and whether the test given here was the same test. *See* Rec. Doc. 1558-4, p, 3.
[15] Assistant Superintendent Genco stated that: "Through discussions with other school system's Human Resource Development Directors or equivalent positions, I am aware that . . . [several parishes] utilize screening tests for some positions." Rec. Doc. 1558-4, p. 3, section 5. This statement does not verify that anyone, anywhere ever used the test that was administered in this case.

- What objective metrics does the test measure, and how closely does a "passing" grade of 70% or better correlate with whether a candidate will be able to adequately perform the job?

- What has been done to determine whether the test is valid and reliable?

What TPSB chose not to address or discuss is concerning.[16]

To justify using the screening test that it used here, TPSB offers conclusory statements without a factual basis or support, such as the following:

> All questions [on the test] are based on initiatives or laws that have been implemented in our District with professional development opportunities to support teachers in successful execution of the programs. If the applicants participate in District technology professional development on a regular basis, they will have no problems passing the test.[17]

TPSB created a written test, for which there is no evidence of reliability or validity. It selected a cutoff of 70% as the threshold for a candidate to be interviewed, but it failed to disclose to job applicants that a test or a threshold score were job requisites. The managers to whom the Instructional Technology Facilitator reports had no similar testing requirements. But based on Dr. Robertson's scoring on this unproven test, it declined to interview the single PhD candidate for the Technology Facilitator's position, who is an African American. Taken as a whole, the Court agrees with the CCO that TPSB's refusal to interview Dr. Robertson was not in compliance with Rec. Doc. 866.

TPSB's argument that the CCO misapplied the "more qualified" provision of Rec. Doc. 866 lacks merit. Because Rec. Doc. 866 applies to Dr. Robertson's complaint, if a non-black candidate is recommended for the position to the exclusion of a qualified black applicant, only a *more qualified* candidate may be properly recommended and hired. TPSB submitted the

---

[16] *See* Rec. Doc. 1558-5, p. 4,
[17] *Id.*

8

credentials of the non-black candidate that it hired[18] along with Dr. Robertson's.[19] The Court finds that the non-black applicant here appears to possess excellent credentials and qualifications and so does Dr. Robertson. Moreover, of all the candidates for the position, only Dr. Robertson has a doctorate degree in education and technology. In fact, Dr. Robertson has a higher level of education than the Director of Technology and Assistant Director of Technology. None of the other candidates, including the non-black applicant who was hired as Instructional Technology Facilitator, are "more qualified," as that term is used in Rec. Doc. 866.

When TPSB hires a candidate before the objection process has run its course, it creates problems for TPSB, the litigants and Court. To invalidate TPSB's Instructional Technology Facilitator hiring decision, at this point, would work an unfair hardship on the candidate that TPSB selected. There is no evidence whatsoever that she did anything wrong that caused or contributed to this problem. The problem is one of TPSB's own making. It would be inappropriate to cause unneeded disruption to TPSB's Technology Department and possibly beyond, or unfairly punish the candidate that TPSB chose. Instead, the least intrusive way to further compliance with the orders and decrees in this case and the ultimate end of bringing TPSB to unitary status in the staff assignment area is as follows: Dr. Robertson shall receive the rank and title of Technology Facilitator, and she shall be paid the salary and benefits commensurate with the position. Further when the position of Technology Facilitator next becomes available, Dr. Robertson shall be appointed to that position.

New Orleans, Louisiana this 25th day of February 2019

SENIOR UNITED STATES DISTRICT JUDGE

---

[18] Rec. Doc. 1558-4, pp. 11-14.
[19] *Id* at pp. 16-20. *See also* Rec. Doc. 1558-2, pp. 2-4.

9