```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA


JOYCE MARIE MOORE, ET AL.,              CIVIL ACTION
                                        NO. 65-15556 "B"
VERSUS
                                        JUDGE LEMELLE
TANGIPAHOA PARISH SCHOOL BOARD,
ET AL.                                  MAGISTRATE JUDGE MEERVELD
```

PLAINTIFFS' POST HEARING BRIEF

A

During the course of hearings on the motion for unitary status, the Superintendent of the Tangipahoa Parish School System, revealed that the Tangipahoa Parish School Board (TPSB) has access to Fifteen Million Dollars available to remove and replace temporary buildings and had contracted consultants to plan an additional multimillion dollar expansion to build new schools.  A  representative of the contracted consultant, Demoine Rutledge, verified her testimony.  Without any court review of this mass[ve building plan, the motion for unitary status asks the court to enter an order [Record Documents 1581-7 and 1615-8] declaring,

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the
> Tangipahoa Parish School System is hereby declared
> unitary. Any and all injunctions and orders entered by
> the Court except those orders found in Record Doc. Nos.

>    1572 and 1573 are hereby vacated. The supervision of
>    the Court over facets of operations of the Tangipahoa
>    Parish School System is continuing to the extent of the
>    provisions contained in the Final Agreement which is
>    hereby acknowledged and subject to the fairness hearing
>    provided for therein upon the expiration of said
>    agreement.

Plaintiffs object. The Tangipahoa Parish School System has not complied with orders of the court, including injunctions and instructions that mandate elimination of the dual school system based on race, "root and branch."  The TPSB admits that its school system is not fully unitary by the standards set forth in Green v. County School Board, 391 U.S. 430 (1968). The court has not declared the system to be unitary.  The Court Compliance Officer has not recommended unitary status; and the Chief Desegregation Implementation Officer gave a written affidavit and testified in court that the school system has not done all that can be done to desegregate schools.

   Plaintiffs are concerned because the Fifth Circuit determined recently in this case, less than six months prior to the filing of the motion for unitary status,

>    [the] district court's supervision should end once it
>    makes a final determination of unitary status. Bd. of
>    Educ. of Okla. City Pub. Sch. v. Dowell , 498 U.S. 237,

>    248, 111 S.Ct. 630, 112 L.Ed.2d 715 (1991); see also
>    Overton, 834 F.2d at 1174.

Moore v. Tangipahoa Par. Sch. Bd., 921 F.3d 545, 549 (5th Cir. 2019). The court's of record denial that its supervisory authority is not relinquished by granting unitary status is clearly erroneous. The motion before the court asks the court to grant a complete, unfettered final determination unitary status.

Considering the history of this case, plaintiffs urge that defendants' massive building plans, which, without question will impact student assignment, require the court to retain jurisdiction to insure that the removal of portable buildings and proposed new construction, inter alia, promote elimination of the remnants of the dual system, admitted by the TPSB, and do not promote recurrence of said dual system. The defendants have not earned unitary status.

In Tasby v. Estes, 517 F.2d 92, 105-06 (5th Cir. 1975), the district court approved the school system's proposed construction plan. The Fifth Circuit Court of Appeals determined that "the school authorities in the district court ha[d] not accorded proper weight to the racial composition of student bodies in considering the selection and acquisition of new sites and new facilities." Id. at 106. The Fifth Circuit reversed and remanded with directions that the district court "evaluate all the site

acquisition, school construction and facility abandonment plans put forward by the [school district] in light of the impact which these undertakings will have upon the disestablishment of the dual school system." Id. at 110.  See also, Swann v. Charlotte-Mecklenburg Bd. of Ed., 402 U.S. 1, 21, 91 S.Ct. 1267, 1278-79, 28 L.Ed.2d 554 (1971) (non-unitary school obligated to "see to it that further school construction and abandonment is not used and does not serve to perpetuate or re-establish the dual system); Lee v. Macon County Bd. of Ed.,584 F.2d 78, 81 (5th Cir. 1978) (non-unitary school has duty "to take no actions which would reinstitute a dual school system . . ."); United States v. Lawrence County School District, 5th Cir., 1969 order ("All school construction, school consolidation and site selection . . . shall be done in a manner which will prevent the recurrence of the dual school structure . . .").

In Swann v. Charlotte-Mecklenburg Board of Education, the United States Supreme Court recognized that it is the responsibility of local authorities and district courts to see to it that further school construction and abandonment is not used and does not serve to perpetuate or re-establish the dual system. The defendants seek obviously to escape court review of its building plans.

B

Ms. Stilley testified that they are using course choice/supplemental course allocations to improve the school scores. She could not address if this program assisted minority students, nor how many minority students participated in the program. She testified that they are using new disciplinary processes and are now being trained. Although it appears to be a good program, it is undetermined how it will impact the disparate discipline of minority students. Mr. Rutledge talked about the contract hiring his company and how it would assist in facilities meeting desegregation objectives, but the contract clearly states that the desegregation objectives are not a part of the contract that was offered into the record, D-1.

Mr. Mack McCraney testified that he was a part of a community advisory committee instituted by Ms. Stilley. He asked that he and his committee be allowed to function. On cross examination, he did not answer what it was they could do. If they could do anything, why have they not done so before now.

In deciding unitary status, the ultimate inquiry for the court is "whether the constitutional violator has complied in good faith with the desegregation decree since it was entered and whether the vestiges of pat discrimination have been eliminated

to the extent practicable" Green v. County Sch. Bd., 391 U.S. 430, 88 S. Ct. 1689, 20 L.Ed.2d 716 (1968).

In the instant case the best indication for current good faith effort on behalf of the school board is the Compliance Officer's Report filed September 16, 2019, R. Doc. 1580. The report notes that there were a significant number of complaints. The number of formal complaints is "substantially the same as in the previous reporting period." R. Doc.1580 at 3.

In the area of teacher hiring, the defendants have not reached the goal set forth by the court of 40%. The current percentage is 25.1.

Despite the current student assignment, there are still primarily one race schools at the north and south end of the parish. There are still 11 schools that do not meet the objective of the student assignment plan. As noted in the latest CCO Report, page 20-21, there is great concern on how the student assignment plan impacts the black community and its students with little correction being done to address this issue.

This court denied the Motion for Unitary Status in Facilities in April, 2019. There has not been anything definitive provided to the court that would justify unitary status at this time. The hiring of a firm to put a plan together is not new. This has been done and abandoned several times.

In the area of discipline, it is noted in the CCO Report, R. Doc. 1580 at 39, that discipline in the TPSB's system tends to be disproportionately administered to African American students. Although there was testimony on the reduction in truancy, there was nothing to show that the new system of DRP has impacted the admitted disproportionate discipline for these African American students. The defendants have provided nothing to explain the marked disparity in discipline between black and white black students—nor have they explained to the court how they intend to address this p.roblem.

Ms. Guerin and Mr. McCraney expressed faith in Ms. Stilley. However, opposition to desegregation of public schools is a longstanding, deeply ingrained culture— not the product of one person. Ms. Stilley has barely completed one school year as superintendent. It is great that they believe Ms. Stilley is changing the climate; but that emotional belief does not provide a basis for removing all relief and granting complete unitary status. Until such time as defendants can show that they have achieved unitary status, there is no reason for circumvention of court orders and injunctions on the basis of a promise to do better.

C.

In a desegregation case, the objective is "to eliminate from the public schools all vestiges of state-imposed segregation." Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S.1 (1971).  "The burden on a school board today is to come forward with a plan that promises realistically to work, and promises realistically to work now."  Green v. Cnty. Sch. Bd. of New Kent Cnty., Va., 391 U.S. 430, 439 (1968). (Emphasis ours.)     Far from the requirement in Green that the school system come up with a plan that will realistically work and work now, the proposed Final Agreement is not even a plan! If anything is a plan to develop a plan- sometime in the indefinite future!  It is nothing more than the "profession of a school board which has intentionally discriminated that it will cease to do so in the future." See Board of Ed. Of Oklahoma City v. Dowell, 498 U.S. 237 (1991).

According to hearing testimony of its own witness, Attorney Domoine Rutledge, despite the plan having been filed in September 2019, his company has just been hired by defendant and has not begun work on any "plans", particularly in the areas of student assignment, staff assignment and facilities, in which defendant acknowledges, and the court has affirmed in decisions, that the school system had not attained unitary status.  Moreover, defendant has presented no time frame by which the studies would

be completed, and the "plan" implemented. Certainly, the plan cannot not be said to realistically work and promises realistically to work now. Finally, the agreement does not provide for any court supervision over the future plan and as the agreement will not require court approval once it is completed.

By framing the motion as a "joint motion," defendant seeks to escape the duty placed upon it by Swann and Green to create a plan. The fact that undersigned counsel, who has worked on this case for more than forty years, is not a required signatory to the agreement, is evidence of the fact that plaintiffs are only a nominal party to the agreement and begs the legitimacy of this very process. It suffices to say, that the fact that undersigned counsel is required by the court to file objections to the proposed "joint motion," it can in no way be deemed as "joint." The representation of "plaintiffs' settlement counsel's" authority in this matter is akin to a less than one percent ownership in a quick claim deed that guaranteed that negotiations were not conducted at arm's length.

The court should treat this motion for what it is - a motion by defendant to dissolve previous injunctions and orders without the necessity of an adversarial hearing wherein defendant would be required to carry the burden of proving that the  that it has fulfilled it duty to create school system where discrimination

has been eliminated root and branch. Rather, the motion just asks this court to graciously issue an order that the school system "be declared unitary in all of the facets of its operation and accordingly, that all outstanding injunctions be dissolved, and all outstanding orders be withdrawn by the Court…" R. Doc. 1615, p.2 ¶6. Further, the motion is a covert attempt to manipulate this court into abandoning the procedure that has established under Freeman V. Pitts of incrementally ruling on the schools system's performance in implementing the Green factors and garnering a declaration of unitary without having to produce a single iota of evidence that it has made any progress in the three areas where it only been granted provisional unitary status.

Little time in these proceedings have focused on input of the real parties in interest in this lawsuit in developing this Final Agreement. While the court should be reasonably concerned that plaintiffs' counsel is required to present evidence from both sides of the bar in these proceeding, little if any attention has been given the fact that the Final Agreement includes a substantial financial public monetary outlay that will require the passage of tax proposals. Plaintiffs respectfully reminds this court that since the initiation of this lawsuit the community has three times voted down tax increases to provide for

new school construction and other improvements increase the quality of education offered by the system. Given these factors, it would seem that public input would have been indispensable in creating the agreement. Yet, none was requested or received.

According to the testimony of the Superintendent in the previous hearing, there were a lot of meetings. However, she fails to identify any meeting or meetings that were held specifically to allow the community to give input into the development of the Final Agreement. Additionally, she testified that she went to the Board President and requested and emergency meeting, which was held less than twenty four hours later. This emergency meeting was allegedly posted on the school board's website. At the meeting the school board approved the agreement thereby obligating a community which had, on three prior occasions, refused to pass taxes to support the school system.

This litigation has lasted some six decades. Plaintiffs share the frustration that a resolution of case has taken so long. However, the fact that the case has dragged on for so long is in no way attributable to any actions of plaintiffs. The burden and responsibility or transitioning the school system from one that is segregated and discriminatory to one that is unitary is placed solely upon the school board to implement plans to meet this requirement; and upon the court to supervise it. For six

decades of court supervision, the school board has not created or implemented an acceptible plan.  Nor has the court exercised "the full panoply of the trial court's remedial power" to transition it to a "unitary, nonracial system of public education. <u>See Valley v. Rapides Parish Sch. Bd</u>. 702 F.2d 1221, 1225 (5th 1983) and Green at 436.

                                RESPECTFULLY SUBMITTED
                                BY ATTORNEYS FOR PLAINTIFFS

                                _____
                                NELSON DAN TAYLOR, SR. (# 12684)
                                J. K. Haynes Legal Defense Fund
                                1822 N. Acadian Thruway West
                                Baton Rouge, LA 70802
                                Phone: 504-214-7109

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on this day, January 23, 2020, I filed the foregoing pleading electronically using the court's CM/ECF filing system which gave electronic notice to all counsel of record.

_____