UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOYCE MARIE MOORE**, *et al.*,   *Plaintiffs*, | * * * | CIVIL ACTION NO. 65-15556 |
| | * | SECTION "B" |
| v. | * | |
| | * | MAGISTRATE (1) |
| **TANGIPAHOA PARISH SCHOOL BOARD**,   *Defendant.* | * * * * | JUDGE LEMELLE |

* * * * * * * * * * * * * * * * * * * * * * * * * *

### TANGIPAHOA PARISH SCHOOL BOARD'S
### REPLY TO PLAINTIFFS' POST HEARING BRIEF

**MAY IT PLEASE THE COURT**:

Plaintiffs Joyce Marie Moore and Others and Defendant Tangipahoa Parish School Board ("the Board"), through undersigned designated settlement counsel, in reply to Plaintiffs' Post Hearing Brief relative to the Joint Motion for Entry of Order Declaring Tangipahoa Parish School System Unitary and Acknowledgement of Final Agreement ("Joint Motion") now before this Court, respectfully submit:

The Court heard testimony from Domoine Rutledge ("Mr. Rutledge"), who, along with his firm, CSRS, has been hired by the Board to provide facility planning services. He made it clear that their role is to provide information and guidance and to make recommendations to the board relative to a plan to (1) prepare to accommodate growth (in a parish where preliminary numbers anticipate a 30% growth over the next six years) and (2) to facilitate the reduction and elimination of temporary buildings. Mr. Rutledge testified that they have been tasked with achieving these goals, all the while aiding the district in complying with the directives of the Court as they relate to the desegregation matters. He further testified that the contract between

the Board and CSRS, which has been made a part of the record, specifically mandates desegregation compliance.  Mr. Rutledge outlined the comprehensive plan that has been put into place, and measures taken to date to begin the facilities planning.  A demographer has been engaged, a vital initial step to establish the needs in each area of the parish prior to being in a position to make recommendations in a district known to have limitations on its resources.  Mr. Rutledge was emphatic that collaboration within the community and coordination with stakeholders are essential elements in formulating recommendations going forward.

Plaintiffs urge that the Board has not achieved unitary status and has not "complied with orders of the court, including injunctions and instructions that mandate elimination of the dual school system based on race" thus no order should issue from this Court allowing this building plan without court review.  [While Plaintiffs allege that testimony reveals Fifteen Million Dollars is available for removal of temporary buildings, etc., the Board notes that the testimony and evidence reveals the amount is actually Ten Million Dollars.]  Plaintiffs urge that the Joint Motion asks for complete and unfettered final determination of unitary status.  That simply is not the case.

The Joint Motion does not request "complete, unfettered final determination of unitary status."  It instead details a comprehensive plan to ultimately reach that goal, at some point in the future, clearly contemplating this Court's supervision until that goal is reached.  There has not been any Motion placed before the Court requesting that this Court relinquish its jurisdiction in this matter.  This Court has been unequivocal that it has no intention of relinquishing its supervisory authority in this matter at this time.

As outlined by Mr. Rutledge's testimony, in testimony by Ms. Stilley previously and in the recent hearing before this Court, and as outlined in the Final Agreement, the Board has made great strides in the beginning stages of addressing issues remaining in the area of facilities since the Court granted provisional unitary status in this area on July 21, 2017. While Plaintiffs cite jurisprudence for the proposition that school construction projects must not serve to perpetuate or re-establish the dual system, the Board avers that the Joint Motion and all documentary and testamentary evidence heretofore submitted to the Court in support of the Joint Motion reveals a comprehensive, thoughtful approach to ensuring appropriate safeguards against perpetuating a dual system, and of course, the Joint Motion contemplates that the entire process remains under the Court's supervision pending a Fairness Hearing wherein substantial compliance can ultimately be recognized.

While Plaintiffs aver that the Court Compliance Officer ("CCO") has not recommended unitary status, the Board notes that making such a recommendation, or opposing same, would not be within the purview of the CCO's duties. Nonetheless, while the CCO, in his latest report to the Court, recognized areas where "there are improvement opportunities, as there always are in any matters involving school systems anywhere," he also recognized the good faith efforts and gains being made, largely across the board. He recognized the collaborative and productive efforts being made as well as the extensive planning process and detailed plans for implementation instituted with Superintendent Stilley.

Plaintiff also argues that the Chief Desegregation Officer ("CDIO") testified that the school system has not done all that can be done to desegregate schools. The Court has had the benefit of hearing the CDIO directly. While he had some reservations relative to the Joint Motion removing him from the hiring process and having him no longer receiving complaints, he

recognized also that his role would be expanding under the terms of the Joint Motion to the extent that he may require staffing. The CDIO testified that if he observed problems, even if outside of his delineated responsibilities, he would report same to the superintendent and CCO. While the CDIO testified that he has some reservations about certain limited aspects relative to his own duties going forward, those reservations should not preclude the grant of the Joint Motion now before this Court.

Plaintiffs aver that there are a couple of areas (course choice/supplemental course allocations and new disciplinary processes) where quality of education's (academics) impact on minority students is yet to be determined. Clearly, as the CCO noted in his report, there are many new, innovative initiatives which have been undertaken by the Board, in good faith, to address areas of concern. It takes time for those efforts to produce numbers that can be evaluated vis-à-vis impact. The Joint Motion addresses continuing evaluation and opportunities to redirect, as necessary to ensure continued compliance. Plaintiffs also aver that Mr. Rutledge testified how his services will assist in meeting desegregation objectives but noted that the contract precludes desegregation objectives. Mr. Rutledge's testimony revealed a clear understanding of the necessity of his recommendations dovetailing with desegregation compliance mandates. The contract speaks for itself, and contains explicit language covering such concerns. Plaintiffs also aver that Mr. McCraney could not answer what the community advisory committee, to which he was appointed by Superintendent Stilley, could do. Mr. McCraney testified that the committee met and reviewed the plan and he believes it presents a great opportunity for everyone to work together to move forward.

Plaintiffs note that with regard to teacher hiring, the Board has fallen short of the goal of 40%. In the area of teacher assignment, the Board has done and continues to do everything

practicable to recruit and hire black individuals.  Once again, the CCO's report is instructive.  He recognized the System's good faith efforts in hiring as many qualified black teacher applicants as it could.  He detailed the System's continuous work in recruiting efforts designed to attract more African American candidates and praised the System's improved retention efforts.  The CCO noted overall optimism in going forward in this area. (Doc. 1580)

In the area of student assignment, previously established goals related to the number of students in desegregated schools have been met.  The CCO recognized that the System had experienced a steady decrease in the number of its schools falling outside of the +/- 15% metric goal. (Doc. 1580)  The initial 2010 stated goal was to desegregate 18 schools and 8,207 students with the implementation of Order 876. (Doc. 876-2)  The System currently has 20 out of 33 schools and approximately 13,000 students desegregated according to October 1, 2019 data.

Plaintiffs note the CCO's concern about disparate disciplinary issues and aver that the Board has not offered a plan for addressing this concern.  Superintendent Stilley gave comprehensive testimony relative to those efforts.  She outlined program development initiatives and outlined training to better address effective interventions with at-risk children.  That testimony was supplemented with introduction of exhibits for consideration by the Court.  The Board clearly has offered a plan for addressing concerns in this area.

Finally Plaintiffs aver that the Joint Motion now before this Court is not a plan and has put forth no time frame for a plan to be implemented.  They also urge apparently that the Joint Motion is not a legitimate filing because it was confected by designated settlement counsel and that it is a procedurally defective attempt to obtain a declaration of unitary status in the absence of evidence reflecting that it is entitled to same.  The Board avers that the Joint Motion and Final

Agreement is a plan which has come to fruition after an arduous, joint effort by designated settlement counsel. While certain aspects certainly defy having a "date certain" assigned, the Joint Motion clearly contemplates optimism that substantial compliance will be found at a Fairness Hearing as soon as practicable, but at least three years from inception of the effective period. That the Board's goal is to be successful in a Fairness Hearing as soon as practicable reveals that it intends to continue its good faith efforts to implement measures necessary to achieve its goal.

Plaintiffs again urge that the parties of interest in this matter had no opportunity to provide input, and particularly because it will require tax money to implement, public input should have been obtained. School board meetings are advertised and open to the public. The Superintendent's schedule is well documented in the record and reveals her attendance at meetings, public functions, and her willingness to talk to the public via local media outlets. To the extent the public wished to have input, they clearly were afforded ample opportunity to contribute same.

**Conclusion**

This Court has already recognized that the System has achieved unitary status in the areas of transportation and extracurricular activities and has achieved provisional unitary status in the areas of facilities and staff assignment. In the area of teacher assignment, the Board has done and continues to do everything practicable to recruit and hire black individuals. In the area of student assignment, previously established goals related to the number of students in desegregated schools have been met.

The Joint Motion and Final Agreement, outlining the Board's proposed path to ultimately being found in substantial compliance thereof following a Fairness Hearing, are consistent with applicable federal law.  The provisions contained therein are reasonable, equitable, constitutional and consistent with public policy.  The Joint Motion and Final Agreement themselves, and the testimony and evidence in the record and before the Court, reveal that the Board is entitled to the relief sought.

WHEREFORE, the parties respectfully again move the Court to GRANT unitary status, acknowledging the Final Agreement between the parties.

Respectfully submitted,

/s/ Ashley E. Bass_____
Ashley E. Bass (LA Bar Roll#24364)
Cashe Coudrain & Bass
P. O. Drawer 1509
Hammond, LA 70404-1509
Telephone: (985) 542-6848
E-mail: aeb@ccbattorneys.com
Attorney for Tangipahoa Parish School Board

/s/ Gideon T. Carter, III_____
Gideon T. Carter, III (LA Bar Roll # 14136)
4962 Florida Blvd. FL-4
Baton Rouge LA 70806-4031
Telephone: (225) 214-1546
E-mail: gideontcarter3d@gmail.com
Attorney for Plaintiffs