UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**JOYCE MARIE MOORE, ET AL.**                                **CIVIL ACTION**

**VERSUS**                                                   **NO. 65-15556**

**TANGIPAHOA PARISH SCHOOL BOARD,**                          **SECTION: "B"(1)**
**ET AL**

## ORDER AND REASONS

Before the Court are a motion to intervene (Rec. Doc. 1662) and defendants' opposition (Rec. Doc. 1666). Movant requested oral argument (Rec. Doc. 1662-3), but that request is **DENIED** as unnecessary. The parties' briefings and record sufficiently address pertinent matters for resolution of the intervention motion. For the reasons below,

**IT IS ORDERED** that the instant motion to intervene is **DENIED**.

## FACTS OF THE CASE AND PROCEDURAL HISTORY

Movant Mr. Oscar Dantzler ("Dantzler") is a school bus driver with over 29 years of experience in the transportation department of the Tangipahoa Parish School System. Rec. Doc. 1662-1 at 2. During his time with that department, Dantzler alleges that he has been subjected to numerous acts of discrimination and retaliatory conduct. *Id.*

In December 2003, Dantzler submitted a complaint to defendant Tangipahoa Parish School Board ("the School Board"), alleging unlawful employment practice, improper decrease in his operation allowance, harassment, discrimination, unfair treatment and retaliation. *Id.* Dantzler specifically alleges being notified on December 9, 2003 that all bus drivers would receive an increase in their operational lease amount and be paid route milage of no less than 20 miles. Rec. Doc. 1662-2 at 2. However, on February 26, 2004, Dantzler received a paycheck containing

1

reductions in his fuel adjustment amount, local fuel adjustment amount, and a lower transportation amount. *Id.* Dantzler further alleges that when he inquired about the pay decrease, a supervisor responded that the GPS unit attached on Dantzler's bus showed Dantzler drove less miles than he reported. *Id.* The School Board allegedly failed to respond to Dantzler's complaint. He subsequently filed a charge of discrimination against the School Board with the U.S. Equal Employment Opportunity Commission (EEOC). Rec. Doc. 1662-1 at 2.

Dantzler's EEOC charge alleges the School Board's mileage minimum policy violated his constitutional rights because he received the same raise as drivers who drove less than twenty miles. Rec. Doc. 1662-2 at 2. Additionally, Dantzler asserts that the School Board's practice of placing a GPS on his bus without affording him the opportunity to address the lower registered miles was unfair and unconstitutional. *Id.* On March 2, 2004, after investigating Dantzler's discrimination claim, the EEOC stated it was "unable to conclude that the information obtained establishes violations of the statutes." Rec. Doc. 1662-2 at 1.

In August 16, 2004 Dantzler applied for several bus route vacancies but the application was denied. Rec. Doc. 16612 at 1 at 2. According to Dantzler, some of the available routes were given to a white male and two white females – all of whom were allegedly less qualified than him. *Id.* The EEOC dismissed this charge because it could not conclude that a statutory violation had occurred. Rec. Doc. 1662-2 at 3.

Two months later, Dantzler applied, interviewed, and tested for one of two mid-level supervisory positions and allegedly received the highest score among the applicants. Rec. Doc. 1662-1 at 2. However, the School Board gave the positions to two men whom the School Board allegedly favored before the testing and interviewing process. *Id.* at 2-3.

On February 17, 2005, Dantzler applied for a position to serve on the Bus Driver Advisory Committee, which was subsequently awarded to a white female allegedly less qualified than him. *Id.* at 3. In Dantzler's March 2005 charge of discrimination to the EEOC, his supervisor reportedly told Dantzler that he was not selected because the other candidate received more votes. Rec. Doc. 1662-2 at 7. The EEOC once again could not conclude that a statutory violation had occurred. *Id.* at 6.

In 2014, Dantzler alleges that the School Board continued to retaliate against him by declining to offer him a mid-level transportation coordinator position and instead hired a less qualified white female. Rec. Doc. 1662-1 at 3. In 2018, Dantzler sought to apply for two available positions, a mid-level transportation coordinator position and a transportation routing coordinator position, which were offered to an allegedly less qualified white female and black female. *Id.* EEOC once again dismissed the discrimination claim, finding that the information was inconclusive to establish a statutory violation. Rec. Doc. 1662-2 at 8.

On November 2, 2020, Dantzler filed suit against the School Board, which was assigned to another section of this Court.[1] *See Dantzler v. Tangipahoa Parish School Board, et al* (CA 20-2960). On February 8, 2021, the defendants filed a motion to dismiss on the basis that Dantzler failed to adequately plead a discrimination claim. *Id.*, ECF No. 16. Upon referring to this Court's previous order implementing new hiring procedures to promote diversity goals, the defendants argued therein that at the time of Dantzler's alleged discrimination, "the Transportation

---

[1] Prior to filing suit in this Court, Dantzler filed two suits in the United States District Court for the District of Columbia against the same defendants and other local, state, and federal officials on the same underlying discrimination claims. *Dantzler v. United States Department of Justice, et* al, ECF No. 1 (D.D.C. June 8, 2020); *Dantzler v. Tangipahoa Parish School Board, et al*, No. 1:20-cv-01629-TNM, ECF No. 1 (D.D.C. June 17, 2020). The School Board filed a motion to dismiss, to which Dantzler failed to respond. Thus, the court treated his motion as conceded and dismissed the School Board defendants from the case. *Dantzler v. Tangipahoa Parish School Board, et al*, ECF No. 41 at 1-2 (D.D.C. Nov. 30, 2020). The other matter was also ultimately dismissed. *Dantzler v. U.S. Dept. of Justice, et al*, ECF No. 38 (D.D.C. Dec. 22, 2020); *id.*, ECF No. 40 (D.D.C. Mar. 9, 2021).

Department was required to remain racially un-identifiable in accordance with Order 866 [in *Moore*]." *Id.*, ECF No. 16-2 at 6; ECF No. 16-9 at 2.[2] Noting that Dantzler did not comply with the recently adopted hiring procedures by failing to object to the recommendation and hiring of another black candidate, defendants asserted that Dantzler has not sufficiently plead factual allegations of discrimination. *Id.* at 7-8. Shortly after Dantzler filed the instant motion, the *Dantzler* court denied defendants' motion to dismiss without opining on the merits based on plaintiff's counsel's "persuasive arguments."[3] *Id.*, ECF No. 68 at 1.

On March 29, 2021, Dantzler filed a motion to intervene, requesting that his case be transferred to this section as related to the above matter. Rec. Doc. 1662-1 at 6. Dantzler generally alleges that defendants' discriminatory hiring practices of favoring less qualified, predominantly white candidates over Dantzler demonstrate a blatant disregard of a January 18, 2010 order. *Id.* at 4-5. According to Dantzler, defendants intentionally mischaracterized that order and sought to circumvent its directives on hiring within the school system by maintaining discriminatory hiring practices in other departments, such as the transportation department. *Id.* at 3-4; *see Dantzler* (CA 20-2960), ECF No. 16-2 at 6-8.

---

[2] On January 18, 2010, this Court issued an order in the above-captioned case, implementing new hiring procedures for principals, administrators, and supervisors within the Tangipahoa Parish School System. Rec. Doc. 866. Pursuant to the plan attached therein, "the school system shall hire or appoint a qualified Black person who has submitted an application to fill them to achieve a diversity goal of 40 percent Black and 60 percent white in each category. . . ." *Id.* at 2.

The plan further provided that the school system shall screen all applicants for the open position and submit a list of the name and race of each qualified applicant to the Court Compliance Officer (CCO) and Chief Desegregation Implementation Officer (CDIO). *Id.* Following committee review and evaluation of the qualified applicants, the school system should recommend a qualified black applicant, if any. *Id.* Should the superintendent choose to not recommend the qualified black applicant in favor of a more qualified non-black applicant, the name of the proposed applicant with written reasons as to why the black applicant was not recommended must be submitted to the CCO and CDIO. *Id.* If the CCO receives any objections by black applicants to the recommendation, he shall notify the superintendent, who shall respond to the objections in writing prior to formal recommendation to the school board. *Id.*

[3] In the same action, Dantzler also filed a motion to transfer his case to this section, which was denied without written reasons. *Dantzler*, (CA 20-2960), ECF No. 51.

On April 20, 2021, defendants timely filed an opposition. Rec. Doc. 1666. Generally, defendants argue that Dantzler's complaints pertain to allegations that pre-date the meaningful changes in hiring policies that have been recently implemented. *Id.* at 2. As such, defendants allege that Dantzler's motion to intervene is untimely and fails to demonstrate a legally cognizable interest. *Id.*

Plaintiff also referenced in comparison an employment discrimination case that was settled involving another school bus driver.[4] Defendants referenced four lawsuits filed by plaintiff.[5] Collectively, Dantzler has filed suits across several sections of this Court, raising claims of employment discrimination, RICO conspiracy, and constitutional violations against former employers, members of the federal judiciary, elected officials, and counsel. *Id*.

Mr. Dantzler's individual discrimination claims were either previously dismissed or otherwise addressed through the EEOC system. Specifically, the alleged discrimination in 2003-2004 was the subject of two separate actions filed in state and federal court, both of which were dismissed with prejudice. The alleged discrimination in 2005 for failure to hire occurred prior to this Court's entry of Order 866 on hiring practices in this case. Additionally, as it pertains to the two instances of alleged failure to promote in 2014, Dantzler was reportedly not selected for either of the open positions for an alleged failure to meet the hiring requirements (i.e., bachelor's degree at an accredited university, not having the required test score). Notably, at the time of Dantzler's application, the transportation department had reached unitary status.

---

[4] In *Nostriano*, the white female plaintiff, who also worked as a school bus driver for the Tangipahoa Parish School System, moved to transfer and consolidate her case to this section as related to the *Moore* case. *Nostriano v. Tangipahoa Parish School Board, et al*, (CA 16-17832), ECF No. 10. Notably, the Magistrate Judge denied plaintiff's motion, and upon conferring with this section, it was agreed that "maintaining the captioned case in its present posture without transfer or consolidation is in the best interest of justice." *Id.*, ECF No. 19 at 1.

[5] *See Dantzler v. Pope*, (CA 08-3777); *Dantzler v. Dantzler*, (CA 08-03821); *Dantzler v. Africk*, (CA 09-3703); *Dantzler v. Ardoin*, (CA 18-11022).

Lastly, Dantzler's 2018 discriminatory hiring claim submitted to the above parties was held in abeyance in view of his then-pending EEOC discrimination complaint. Rec. Doc. 1666-16 at 1.

## LAW AND ANALYSIS

Federal Rule of Civil Procedure 24 provides two avenues for intervention: intervention of right and permissive intervention. Fed. R. Civ. P. 24. Intervention of right applies when the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a).-Alternatively, permissive intervention applies when a movant has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).

Regardless of which avenue a movant pursues, a motion to intervene must be timely. *See* Fed. R. Civ. P. 24. Timeliness "is not a word of exactitude or of precisely measurable dimensions" but can "be determined from all the circumstances." *Jones v. Caddo Parish School Bd.*, 704 F.2d 206, 218 (5th Cir. 1983). The court may determine the timeliness of a motion to intervene by weighing four factors:

> (1) [t]he length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he knew or reasonably should have known of his interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977). "The question whether an application for intervention is timely is largely committed to the discretion of the district court, and its determination will not be overturned on appeal unless an abuse of discretion is shown." *Id.* at 263.

1. <u>Length of Time</u>

The Fifth Circuit guided, "the relevant time period for gauging the timeliness of an application for intervention begins when the proposed intervenor knew or should have known of his or her interest in the case; actual knowledge is not required." *Jones*, 704 F.2d at 220. The *Jones* court determined that the intervention request was untimely because movant had actual or constructive knowledge of her interest yet "remained conspicuously silent through almost sixteen years of legal proceedings and negotiations" before seeking intervention. *Id.* at 218; *see Rotstain v. Mendez*, 986 F.3d 931, 938 (5th Cir. 2021)(concluding that a delay of 18 months weighed against timeliness). On rehearing, the Fifth Circuit affirmed denying the untimely intervention, given that "the public had been kept well-informed of the progress of the parties' negotiations and were given every opportunity to voice their opinions in public meetings held in all parts of the parish." *Jones v. Caddo Parish School Board*, 735 F.2d 923, 932 (5th Cir. 1984)(en banc).

In *Dandridge*, two requests for intervention were made after the parties submitted a proposed consent order and shortly before the scheduled fairness hearing, wherein this Court was charged with either adopting or rejecting the proposed order. *Dandridge v. Jefferson Parish School Bd.*, 249 F.R.D. 243, 247 (E.D.La. 2008)(Englehart, J.). In view of the case's posture, the court denied both motions as untimely, noting that the movants knew of the parties' negotiations and consent order yet failed to explain their delayed request. *Id.*; *United States v. Carroll County Board of Education*, 427 F.2d 141, 142 (5th Cir. 1970)(per curiam)(denying untimely intervention request filed months after the parties' school desegregation plan was judicially approved and put into effect); *United States v. Covington County School District.*, 499 F.3d 464, 466 (5th Cir. 2007)(per curiam)(denying untimely intervention motion because appellants waited nearly fifteen weeks after the district court entered the consent decree before filing their motion).

This well-publicized case, originally filed in 1965, remains ongoing to eradicate the Tangipahoa Parish School System of residual discriminatory practices, implement new policies that will promote unitary status, and ensure compliance with related court orders. While Dantzler acknowledged the age and ongoing nature of this case, he never previously moved to intervene despite allegedly discriminatory behavior towards him since 2003. He specifically references defendants' court-approved hiring procedures, yet he fails to make any allegation that he followed those procedures to formally object to the recommended candidates for positions he sought as required by the court's order. Rec. Doc. 866 at 2.

Like the movants in *Jones* and *Dandridge*, Mr. Dantzler knew or reasonably should have known that the parties, including the desegregation implementation officer and court compliance officer, have been actively working to address the vestiges of *de jure* segregation. Instead, he waited over sixteen years to claim an interest while allegedly enduring targeted discrimination. Dantzler's prolonged and unexplained delay in seeking intervention becomes increasingly difficult to comprehend considering his relatively public role in the community and his multiple discrimination lawsuits against the School Board in this and other courts. *See Jones*, 704 F.2d at 219. Thus, the length of time it took to intervene in this case weighs against a finding of timeliness.

2. <u>Prejudice to Existing Parties</u>

The Fifth Circuit contemplated that late stage interventions in a desegregation case would necessarily open the floodgates to litigation and delay cooperative resolution efforts by the original parties. *Id.* at 221; *see Boyd v. Foti*, No. Civ. A. 94-204, 1997 WL 426098, at *2 (E.D.La. July 30, 1997)(Lemelle, M.J.). While the recent grant of provisional unitary status is subject to further considerations, the issue of hiring practices had been addressed in 2010 and is not raised in a

pending motion for new trial. Rec. Docs. 866, 1669. Relitigating a settled issue well over a decade later would hinder the progress made in this case by both parties, particularly in light of Dantzler's failure to follow through with the formal grievance process in this case. *See* Rec. Doc. 1666 at 8. Therefore, the potential prejudice to the existing parties also weighs against a finding of timeliness.

3. Prejudice to Movant

The third timeliness factor turns on adequacy of representation. *Lelsz v. Kavanagh*, 710 F.2d 1040, 1046 (5th Cir. 1983). The Fifth Circuit indicated, "if the proposed intervenors' interests are adequately represented, then the prejudice from keeping them out will be slight." *Id.* The movant bears the burden of demonstrating inadequate representation but "need only show that representation 'may be' inadequate." *Andrews v. City of Monroe*, 314 F.R.D. 422, 426 (W.D.La. 2016). However, "when the party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance." *Id.* (citing *United States v. Franklin Parish School Board*, 47 F.3d 755, 757-58 (5th Cir. 1995)).

Dantzler argues that he will be prejudiced if unable to intervene because merely submitting a formal complaint through the defendants would enable them to intentionally misrepresent his claims. Rec. Doc. 1662-1 at 8. Although the School Board did not directly address the potential for prejudice, it can be inferred from their opposition that Dantzler's interests will not be prejudiced because his claims have already been adjudicated or otherwise addressed through the grievance process or by other courts. Rec. Doc. 1666 at 12.

Indeed, Dantzler utilized the grievance process in this case and submitted a formal complaint on February 21, 2019 regarding the 2018 hiring for the transportation coordinator positions. Rec. Doc. 1666 at 8; *see* Rec. Doc. 1662-2 at 12. However, upon discovery of Dantzler's

9

EEO charge, his complaint in this case was held in abeyance since Dantzler invoked a claim under a separate regulatory scheme. *Id.*; Rec. Doc. 1666-16. Soon after the EEOC dismissed Dantzler's claims, he filed a separate cause of action in this Court. *See Dantzler*, (CA 20-2960).

Because the *Dantzler* court declined to dismiss Dantzler's claims and granted leave to file an amended complaint, Dantzler will not be prejudiced if denied intervention. *See id.* at ECF No. 68. It cannot be overlooked that Dantzler initially submitted a grievance in this case but denied plaintiffs an opportunity to adequately represent him out of distrust of the defendants. Therefore, absent any prejudice to Dantzler, this factor also weighs against a finding of timeliness.

4. Unusual Circumstances

The final factor requires the movant to identify an unusual circumstance that calls for intervention. *Stallworth*, 558 F.2d at 266. Although there is no specific showing of unusual circumstances, a movant may "advance a convincing justification for his tardiness, such as that for reasons other than lack of knowledge he was unable to intervene sooner." *Id.*

Dantzler did not expressly identify an "unusual circumstance" nor explained his delay. Dantzler did indicate, however, that he discovered a recently settled case involving a similarly situated plaintiff who also sought to consolidate her case against the School Board with the instant matter. Rec. Doc. 1662-1 at 1; *see Notariano v. Tangipahoa Parish School Board, et al*, (CA 16-17832). Dantzler does not indicate whether that plaintiff was successful in her attempt but nevertheless relies on *Notariano* as support to grant his own intervention. Rec. Doc. 1662-1 at 1. Upon review of the *Notariano* record, the Magistrate Court subsequently denied her motion. *Notariano*, (CA 16-17832), ECF No. 19. The court reasoned,

> I have conferred with Judge Lemelle, to whom the motion specifically seeks transfer, as Local Rule 3.1.1 contemplates, and we agree that maintaining the captioned case in its present posture without transfer or consolidation is in the best interest of justice. This is an individual Title VII case that is being pursued as such,

10

like any other. It is not being pursued by a member of the Moore class or in the form of a grievance or other procedure mechanism springing from the Moore case. Judge Lemelle has not accepted transfer of individualized Title VII cases of this type that are being pursued through the EEO litigation process for consolidation with the Moore case. His orders in the Moore case are clear and can be read and understood by any judge. Under these circumstances, I cannot conclude that this case compromises all or a material part of the subject matter or operative facts of Moore, or vice versa, and I perceive no reason to transfer this matter to Section "B."

*Id.* at 1-2.

While Mr. Dantzler originally initiated the formal grievance process in this case, he, like Notariano, pursued the EEOC system and later filed a separate discrimination lawsuit. As such, Dantzler fails to identify a distinct circumstance that would require us to go against the *Notariano* court's conclusion that Title VII claims like those raised by Notariano and Dantzler can be properly resolved without consolidation with this case. Because there are no unusual circumstances that mandate intervention, this final factor weighs against a finding of timeliness.

Therefore, upon application of the foregoing factors to the factual circumstances at bar, the intervention is neither timely nor otherwise warranted. FRCP 24.

New Orleans, Louisiana, this 10th day of June 2021

                                                            _____
                                                            SENIOR UNITED STATES DISTRICT JUDGE