```
           UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF LOUISIANA
```

**JOYCE MARIE MOORE, ET AL**                               **CIVIL ACTION**

**VERSUS**                                                 **NO. 65-15556**

**TANGIPAHOA PARISH SCHOOL BOARD**                         **SECTION: "B"(1)**

## OPINION

Plaintiff Taj Mikhail Jackson is a student within the Tangipahoa Parish Public Schools system. He seeks equitable relief, including a temporary restraining order. The relief sought essentially amounts to a court declaration that his school-approved Majority to Minority ("M&M") transfer from Hammond High School to Ponchatoula High School should not prevent his participation in athletic sports, specifically basketball.[1] That declaration would entail modifying the current desegregation order by deleting a provision within same entitled "Athletic Eligibility". It reads thusly:

> Athletic eligibility for students attending a school outside the attendance zone in which they reside shall be subject to the rules of the Louisiana High School Athletic Association. Student athletic eligibility for students returning to their attendance zone school form a transfer school shall be subject to the rules of the Louisiana High School Athletic Association.

Rec. Doc. 1630-1 at 6.

---

[1] M&M or Diversity Transfers generally speaking for purposes here include transfers of minority students from a minority school to a majority school. See also Rec. Doc. 1661. As acknowledged by the parties, this court still maintains jurisdiction over Student Assignments, including M&M or Diversity Transfers.

1

Before a Court may issue a temporary restraining order, the moving party must show: (1) a substantial likelihood that they will prevail on the merits; (2) a substantial threat that irreparable harm will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the non-moving party; and (4) that the granting of the injunction will serve the public interest. *Wexler v. City of New Orleans*, No. 03-990, 2003 WL 1903294 at *2, 2003 U.S. Dist. LEXIS 6561 at *4 (E.D. La. Apr. 15, 2003) (Duval, J.) (citing *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987)); see *also Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994) ("The standards for a temporary restraining order are the same as those for a preliminary injunction."). *Cf. Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Hope Med. Grp. for Women v. LeBlanc*, No. CV 06-9176, 2006 WL 8460106, at *5 (E.D. La. Nov. 21, 2006), aff'd, 259 F. App'x 626 (5th Cir. 2007). The prerequisites for granting injunctive relief were set out in *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974), which held that such extraordinary relief would issue only where (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public

2

interest. Id. at 572-73. The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir.1985).

 The athletic eligibility provision if allowed to stand would and has a chilling effect upon achieving student assignment improvements and final unitary status, especially upon transfers by student and aspiring student athletes. It allows a third party, the Louisiana High School Athletic Association ("LHSAA"), to be the final arbiter of this black student's eligibility to play basketball pursuant to a federal court desegregation order involving M&M or Diversity Transfers. The constitutional authority of federal courts to **ultimately** determine the proper means towards unitary status in a desegregation case cannot be supplanted by or given away to anyone or any entity. The conditional grant of unitary status is not final until the Court determines in a **final** decree that discrimination in the subject areas, e.g. student assignments, has been eliminated in all aspects and affects. *See Moore v. Tangipahoa Parish Sch. Bd.*, 921 F.3d 545, 547-49 (5th Cir. 2019), *aff'g* 2017 WL 3116483. That process includes examination and correction, as needed here, of part of the decree that un-expectantly resulted with a policy decision of an external body that adversely impacts the school system reaching

3

unconditional unitary status. *See Moore v. Tangipahoa Parish Sch. Bd.*, 864 F.3d 401, 406-07 (5th Cir. 2017); *see also Taylor v. Ouachita Parish Sch. Bd.*, 965 F. Supp. 2d 758, 763-64 (W.D. La. 2013).

It is important to state that plaintiff-student's M&M transfer from Hammond High School to Ponchatoula High School was approved on June 13, 2022, (Rec. Doc. 1712-3). He received the Official LHSAA Eligibility Response Form on October 20, 2022, stating that he was "ineligible for varsity & sub-varsity [sports.]" *See* Rec. Doc. 1712-6. The principal of Ponchatoula High School sought an appeal on October 26, 2022, but plaintiff does not indicate any outcome. *See* Rec. Doc. 1712-5. The basketball season started on November 15, 2022, and plaintiff filed the motion for a TRO on December 11, after eleven games had passed. *See* Rec. Doc. 1712. Plaintiff's counsel on the subject motion appears therefore to have had ample time to request a TRO prior to now. There is no allegation that after missing two-thirds of the season that the student would even be afforded the opportunity to play in one of the remaining games. Further, moving counsel for the student either misread or overlooked the restrictive provision at issue in the subject desegregation agreement prior to its adoption by the

4

court. *See* Rec. Doc. 1630-1 at 6.[2] Moving counsel relies on LHSAA Rule 1.13.3, which states:

> Transfers Within the Athletic Attendance Zone: If at any time a student transfers from one-member school to another member school in the same attendance zone, the student shall become immediately ineligible for a period of one calendar year from the date of enrollment/attendance in the second school. The student may be eligible at his/her school of first choice in the attendance zone. A transfer student will be ineligible for a period of one calendar year at the new school unless he/she transfers under one of the following exceptions:
>     1. Majority to Minority Transfer as written into a federal court desegregation order.

Rec. Doc. 1712-5 at 1. While plaintiff argues that the above exception applied to his circumstance, the LHSAA argues that the M&M transfer from Hammond High School to Ponchatoula High School was a transfer outside his athletic attendance zone and LHSAA Rule 1.13.4 applies instead of LHSAA Rule 1.13.3. *See id.*; Rec. Doc. 1717 at 3-5. LHSAA Rule 1.13.4 states:

> Outside the Athletic Attendance Zone: Any student who attends a school outside his/her athletic attendance zone shall be ineligible to participate in interscholastic athletics at that school for a period of one calendar year from his/her first day of attendance unless he/she transfers under one of the following exceptions:
>     1. A first year 7th, 8th or 9th grade student who is transferring outside his/her athletic attendance zone shall be eligible to participate at the sub-varsity level only if the student has attended the first day of school.

---

[2] We cannot punish the student for moving counsel's delay in seeking relief. In the interest of justice, we have taken responsibility with this opinion to correct an oversight by parties, counsel and the court that led to the instant situation.

5

>    2. The student continuously attended the entire 7th and/or 8th grades at a middle/junior high school of that same member school or school system located outside of his/her athletic attendance zone. The school shall be required to register and certify the student's eligibility status on the Members' Only website.

Rec. Doc. 1717 at 5. However, Judge Alvin B. Rubin of the Eastern District of Louisiana ordered in this case that "No student shall be prevented from participating in athletic contests, or any other activity, conducted or sponsored by the Tangipahoa Parish School System as a result of changes in school or class assignment made to effect this Order." *Moore v. Tangipahoa Parish School Board*, 304 F. Supp. 244, 253 (E.D. La. 1969). LHSAA Rule 1.13.4 apparently circumvents the clear language of the Court.

Even if the LHSAA Rule 1.13.4 is applicable, and for reasons noted above and now, it would create unreasonable and discriminatory violations of the student's constitutional rights to due process and equal protection. Under either a rational or strict scrutiny analysis, the provision singles out athletes from other M&M transfer students in a highly punitive fashion. Having considered all legal factors for a TRO weigh in favor of granting a TRO, we also find that the student and schools within the instant educational system would face sanctions from the LHSAA unfairly and unconstitutionally for adhering to federal court orders as here. *See* Rec. Doc. 1714 at 2-4 (citing LHSAA By-Laws). Therefore,

**IT IS ORDERED that:**

**1.** The current athletic eligibility provision is stricken from the desegregation order;

**2.** To prevent continuing violations as noted above, a temporary restraining order is issued, nullifying the instant ineligibility decision of the LHSAA and to hereby allow plaintiff-student, Mr. Taj Mikhail Jackson, to participate in any remaining and future basketball games and other sports with Ponchatoula High School, without sanctions from the LHSAA; and

**3.** Within 10 days, all parties shall jointly propose in writing a date for a preliminary injunction hearing and other remaining issues if any.

New Orleans, Louisiana this 6th day of January, 2023

_____
SENIOR UNITED STATES DISTRICT JUDGE