UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**JOYCE MARIE MOORE, ET AL**                               **CIVIL ACTION**

**VERSUS**                                                  **NO. 65-15556**

**TANGIPAHOA PARISH SCHOOL BOARD**                          **SECTION: "B"(1)**

## OPINION

Due to the Court's prior acknowledgment unanticipated impact of the change to its order at Rec. Doc. 876 at page 14, relative to athletic eligibility of certain student transfers, and no objection to that particular change from any of the attorneys for plaintiffs at the time of its proposal to the Court, the Court adopted a change to such transfers at Rec. Doc. 1630-1 at page 6 and Rec. Doc. 1722 at pages 1 and 7. That court-ordered change was later shown and found, in part, by this Court to potentially have a "chilling effect upon achieving student assignment improvements and final unitary status" in the latter regards. Rec. Doc. 1722 at 3; Rec. Doc. 1744.

Parties were invited to review and propose any objections to the Court's expressed intentions to reinstate the order at Rec. Doc. 876 at page 14, relative to athletic eligibility of certain student transfers. No timely objections were received. The school system proposed changes, and plaintiff's litigation counsel asked for monetary compensation for a particular student and for others who might be similarly situated. The latter request was based on

1

counsel's unfounded belief that the school system, acting under an existing court order, violated the student's unspecified rights under the Fourteenth Amendment when a third party (the Louisiana High School Athletic Association, "LHSAA") denied the student eligibility to play basketball after transferring to a pertinent school. Rec. Doc. 1745; Rec. Doc. 1747. Litigation counsel for plaintiffs also wrongfully and unprofessionally accuses settlement counsel with responsibility for the forementioned denial of eligibility by the LHSAA.  It is clear that the LHSAA's actions were not a violation of the order that was existing at the pertinent time.  Moreover, after becoming aware of the eligibility matter near the end of the basketball season, immediate action was taken by the Court that ultimately allowed the affected student to play in the championship game by vacating its order that initially prevented the student from participation in his chosen sport activity.

Where there are unintended consequences of a court order, the issuing court has broad discretion and inherent authority to make appropriate corrective modifications to the previous order to prevent injustice. *See League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 436 (5th Cir. 2011) (internal quotations and citations omitted) ("[T]he Supreme Court and our court have stated that federal courts have inherent equitable power to modify their own decrees, including consent decrees . . . . A

2

continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need."); *see also Moore v. Tangipahoa Parish Sch. Bd.*, 864 F.3d 401, 406 (5th Cir. 2017).

The original "basic plan" relative to student athletic eligibility was adopted by Judge Rubin on July 12, 1967, which stated:

> A student attending school for the first time on a desegregated basis may not be subject to any disqualification or waiting period for participation in activities and programs, including athletics, which might otherwise apply because he is a transfer or newly assigned student **except that such transferees shall be subject to longstanding, non-racially based rules of city, county, or stat athletic associations dealing with the eligibility of transfer students for athletic contests.**

See *United States v. Jefferson Cnty. Bd. Of Educ.*, 380 F.2d 385, 393 (1967); Rec. Doc. 22 at 7 (adopting the Fifth Circuit language) (Emphasis added). Thereafter, on July 2, 1969, Judge Rubin adopted the "basic [desegregation] plan proposed by Tangipahoa Parish School System, subject to modifications constitutionally required." See Rec. Doc. 83; Rec. Doc. 84. The plan contained the following language:

> No student shall be prevented from participating in athletic contests, or any other activity, conducted or sponsored by the Tangipahoa School System as a result of changes in school or class assignment made to effect this Order.

3

On July 7, 2008, Arlene K. Guerin, the Court Compliance Officer ("CCO") at that time, requested adoption of interim procedures for majority to minority transfers. See Rec. Doc. 684. The proposed policy stated that:

> Majority-to-minority transfer students, regardless of grade level at the time of transfer, shall be eligible to participate in all interscholastic athletic programs governed by the Louisiana High School Athletic Association in the year of initial transfer except those for which a competitive season is in progress. Majority-to-minority students electing to return to their home attendance zone school shall be immediately eligible in all interscholastic athletic programs governed by the Louisiana High School Athletic Association except those for which a competitive season is in progress.

Rec. Doc. 684-1 at 3-4. The Court granted the CCO's motion on July 9, 2008 adopting the foregoing policy. See Rec. Doc. 690.[1]

Therefore, considering parties' responses to our order at record documents 1722 and 1774, the record and applicable law,

**IT IS ORDERED** that the athletic eligibility provision of the desegregation order is amended as follows:

High school interscholastic athletic eligibility shall be governed by rules of the Louisiana High School Athletic Association with the following exceptions:

---

[1] There were further court-ordered modifications concerning athletic eligibility issues. See e.g., Record Documents 876 at 14; superseding consent order 1264 at 9-10; 1630-1 at 6; 1722 at 7.

(A). M-to-M or Diversity transfer, magnet transfer and academic transfer students, students enrolled under the joint custody provisions in Paragraph 5 of Rec. Doc. 876, students enrolled in a school pursuant to the transfer option in Paragraph 1(H) of Rec. Doc. 876, and students enrolled in school pursuant to the transfer option in Paragraph 6 of Rec. Doc. 876, regardless of grade level at the time of transfer, shall be eligible to participate in all interscholastic athletic programs in the year of the initial transfer.

(B). M-to-M or Diversity transfer, magnet transfer and academic transfer students, students enrolled under the joint custody provisions in Paragraph 5 of Rec. Doc. 876, students enrolled in a school pursuant to the transfer option in Paragraph 1(H) of Rec. Doc. 876, and students enrolled in a school pursuant to the transfer option in Paragraph 6 of Rec. Doc. 876 electing to return to their sending or home student attendance zone school shall be immediately eligible to participate in all interscholastic athletic programs.

New Orleans, Louisiana this 13th day of April, 2023

_____
SENIOR UNITED STATES DISTRICT JUDGE