UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOYCE MARIE MOORE ET AL.                           CIVIL ACTION

VERSUS                                             NO. 65-15556

TANGIPAHOA PARISH                                  SECTION "B"(1)
SCHOOL BOARD

ORDER AND REASONS

Before the Court are plaintiffs' motion for contempt and sanctions (Rec. Doc. 1780), defendant Tangipahoa Parish School Board ("TPSB")'s opposition (Rec. Doc. 1789), and plaintiffs' reply (Rec. Doc. 1803). For the following reasons,

**IT IS ORDERED** that plaintiffs' motion for contempt and sanctions (Rec. Doc. 1780) is **DENIED**.

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In the aftermath of Hurricane Ida's August 2021 landfall, TPSB estimated property damages to its school system at $26,000,000. Rec. Doc. 1688 at 5. The damage caused a three-week school closure. *Id*. In all, twenty-nine schools needed repairs. *See* Rec. Doc. 1789-1 at 2. Nearly two years after the hurricane, TPSB sought court approval for emergency repairs to facilities due to Hurricane Ida. Rec. Doc. 1753. While acknowledging the need for court approval for repairs that exceed $125,000, TPSB contended the Court's Order "does not address situations where facilities are damaged during declared states of emergency." *Id.* at 3. Twenty Hurricane Ida-related repairs exceeded that threshold. Rec. Doc. 1753-1 at 1–3. TPSB characterized the projects as "ongoing" at the time of its filing. *Id.* at 3.

1

On the same day of its motion for court approval, TPSB also submitted a motion for an expedited hearing on its repair approval. Rec. Doc. 1754. In denying the motion to expedite, we reasoned "[t]he motion to expedite fails to allege any reason why expedited review would be necessary, and why after waiting nearly two years to file a motion for repairs, the defendant cannot wait an additional twenty days for the motion to be submitted." Rec. Doc. 1756 at 1.

Later that month, after a telephone conference with all parties, this Court granted TPSB's motion for court approval for emergency repairs to facilities due to Hurricane Ida. Rec. Doc. 1773. In so doing, we ordered "[a]ll fundings for the related repairs shall be sourced from insurance and FEMA proceeds[.]" *Id.* at 2. Further, we permitted plaintiffs to make up to fifteen interrogatory requests to TPSB related to the Hurricane Ida repairs. *Id.*

Shortly thereafter, plaintiffs moved to find TPSB in contempt and for sanctions, the motion currently before the Court. Rec. Doc. 1780.

## II.   LAW AND ANALYSIS

Civil contempt is appropriate where a movant establishes by clear and convincing evidence "(1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir. 1987) (citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191 (1949)). The Fifth Circuit has explained the standard of proof in the civil contempt context as "evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (citation omitted). Once the movant establishes the civil contempt elements, the respondent can then present as a defense its

"inability to comply with the subpoena or order." *Petroleos Mexicanos*, 826 F.2d at 401 (citing *United States v. Rylander,* 460 U.S. 752, 757 (1983)).

Civil contempt—and the levying of sanctions upon its finding—serves two purposes: "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) (citing *United States v. United Mine Workers of America*, 330 U.S. 258, 303–04 (1947)); *see also Travelhost, Inc.*, 68 F.3d at 961–62 (dual purpose applied to civil contempt itself, and not only its resultant sanctions). The Fifth Circuit has described losses sustained to be "unnecessary injuries or costs because of the contemptuous conduct" suffered by a party. *Petroleos Mexicanos*, 826 F.2d at 400 (collecting cases); *see also Walle Corp. v. Rockwell Graphics Sys.*, No. 90-2163, 1992 WL 165678, at *2 (E.D. La. July 6, 1992) (asking "whether plaintiff suffered any actual damage as a result of the contumacy"). The civil contempt purposes help "to protect the sanctity of judicial decrees and the legal process." *Am. Airlines, Inc.*, 228 F.3d at 585.

Federal district courts have inherent power to issue sanctions, but that power "must be exercised 'with restraint and discretion.'" *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1406 (5th Cir. 1993) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)). The Fifth Circuit characterizes such power as a "limited source," not "a broad reservoir of power, ready at an imperial hand." *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 701 (5th Cir. 1990). In sum, "the inherent power springs from the well of necessity, and sparingly so." *Nat. Gas Pipeline Co. of Am.*, 2 F.3d at 1407. Further, as this Court has previously expressed it, "we adhere to the principle adopted by the Supreme Court and Fifth Circuit that only '(t)he least possible power adequate to the end proposed' should be used in contempt cases."

*Ocean-Oil Expert Witness, Inc. v. O'Dwyer*, No. 07-3129, 2009 WL 1402495, at *3 (E.D. La. May 14, 2009) (quoting *Anderson v. Dunn,* 19 U.S. 204, 231 (1821) (further citation omitted)). The district court has "broad discretion" in the assessment of civil contempt sanctions. *Am. Airlines, Inc.*, 228 F.3d at 585.

Plaintiffs bring this action for contempt and sanctions in connection with TPSB's motion for court approval for emergency repairs due to Hurricane Ida (Rec. Doc. 1753). As evident in TPSB's motion and subsequent interrogatory answers, twenty of these repairs exceeded $125,000 and all had begun construction, with ten completed, prior to the request for court approval. *See* Rec. Doc. 1753-1 at 1–3; Rec. Doc. 1789-1 at 3–4, 8–9. Plaintiffs argue that TPSB's actions are in direct violation of our Order at Record Document 876, which "explicitly mandates that prior court approval is required before the defendants commence any improvements or repairs to schools in Tangipahoa Parish which costs exceed $125,000." Rec. Doc. 1780-1 at 1. Plaintiffs accurately recite Record Document 876's requirement: "Court approval shall be required for repairs to existing school facilities . . . where the cost of the repair exceeds one hundred twenty-five thousand dollars." Rec. Doc. 876 at 25 ¶31(B). In the years since our Order, this requirement has remained. *See, e.g.,* Rec. Doc. 1661 at 9 ("Implicit again in our consideration is having a plan that could better maintain and promote unitary status, along with consideration of the existing plans and orders found at Record Documents 866–876 and others."). Thus, seemingly present is a *prima facie* case of civil contempt: (1) our Order at Record Document 876 was in place; (2) the Order required approval for repairs exceeding $125,000; and (3) TPSB began, if not completed, multiple repairs above that monetary threshold. *See Petroleos Mexicanos*, 826 F.2d at 401.

In essence, TPSB argues it complied with the spirit our Order. It contends that "an unforeseen and unforeseeable emergency" demands immediate action; that only foreseeable construction or repairs implicate the Court's stated concern in Record Document 876 of eliminating the vestiges of *de jure* segregation; that plaintiffs were aware of project costs exceeding $125,000 through TPSB public meetings and the Court Compliance Officer's 2020–21 and 2021– 22 Annual Reports (Rec. Docs. 1688 and 1719); and that counsel for plaintiffs Gideon Carter and Cassandra Butler gave consent to the repair projects. Rec. Doc. 1789 at 2–5. No argument, however, establishes that TPSB had an "inability to comply with the subpoena or order"—the defense necessary for a respondent in the face of a movant's civil contempt showing. *See Petroleos Mexicanos*, 826 F.2d at 401.

**Particularly concerning** are TPSB's first two stated reasons. Although it is laudable that TPSB is considering the meaning behind the federal court's involvement in a school system's pursuit of unitary status, the higher-purpose goals are achieved through parties' compliance with court-specified mandates. *See, e.g.*, Rec. Doc. 1661 at 5 (citing *Milliken v. Bradley*, 433 U.S. 267, 279–80 (1977) ("Federal courts have broad equitable powers to fashion remedial measures designed to eliminate school segregation.")).

As plaintiffs correctly point out, procedural concerns over repairs from insurance proceeds or emergency situations have previously been before the Court. *See* Rec. Doc. 1803 at 3–4. After an arson at Kentwood High School, TPSB proceeded to use insurance funds for repairs without prior approval. *See* Rec. Doc. 742 at 16–20. This Court made unambiguous the requirement of court approval in such a situation: "I don't care if it's insurance proceeds, taxing proceeds, or donations, they ultimately are the school's benefits and that comes under the ambit of our orders.

So let there be no doubt about that here or in the future." *Id.* at 19–20. Even though there was greater ambiguity at the time of that ruling, counsel for TPSB did not attempt to direct the Court's attention to the purpose behind our orders but admitted mistake: "As I said, Your Honor, if anybody needs to be sanctioned, it's me, it's not the School District. The act was directly on my advice and my advice was given in good faith after looking at the Order and what I considered the Order to apply to." *Id.* at 18.

We further instructed TPSB to request expedited relief in situations of emergency repairs. *Id.* at 19. And TPSB has done so. In a motion submitted by the same undersigned counsel as that in TPSB's recent motion for court approval for emergency repairs due to Hurricane Ida, TPSB requested expedited approval for "necessary restoration and repairs to three (3) school facilities that were damaged in the floods that occurred in Tangipahoa Parish on and after August 13 and 14, 2016." Rec. Doc. 1426 at 1. The motion was filed less than three weeks after the flooding event, and was granted by this Court the same day it was filed. *See* Rec. Doc. 1427.

Further, TPSB's argument that plaintiffs should have been generally aware of repair costs exceeding $125,000 does not present the standard set in our Order. Plaintiffs' knowledge of repairs is helpful—and perhaps could lead to a joint motion for repair approval—but projects are brought to the Court for approval. Then, plaintiffs have clear knowledge of the scope of repairs, and an opportunity to oppose them if desired.

In the same vein, explicit lack of opposition by opposing counsel does not conform with pre-approval requirements, but it does help inform this civil contempt matter. TPSB avers "co-counsel for Plaintiffs, Gideon Carter and Cassandra Butler, indicated their consent to the Hurricane Ida repairs so long as they are exclusively paid for by insurance and FEMA proceeds." Rec. Doc.

1803 at 5. Plaintiffs now argue this consent was vitiated, having been provided only "upon the presumption that the information contained [in the draft motion] was accurate and true." Rec. Doc. 1803 at 9. As plaintiffs stress, the motion inaccurately characterized the relative completeness of many of the repair projects. *Id.* at 8. However, the cost of the repairs remained unchanged, accurately presenting twenty projects over the $125,000 threshold. *See* Rec. Doc. 1753-1. Further, the lack of opposition by counsel appears rooted in their understanding of the funding source, not repair cost or ongoing activity. *See* Rec. Doc. 1789-2 at 1 (Ms. Butler: "When reading your motion I could not recall clearly seeing if funds where from storm recovery, ie insurance or a grant. I may have overlooked it. My thought was if that was the case did it require court approval? I am not opposed to repairs as a result of the hurricane." Mr. Carter: "I agree, and otherwise am not opposed to REPAIRS ONLY as a result of Hurricane Ida damage.").

After a teleconference hearing with all parties, this Court granted TPSB's motion for court approval for emergency repairs to facilities due to Hurricane Ida. Rec. Doc. 1773. Specifically, we ordered that "[a]ll fundings for the related repairs shall be sourced from insurance and FEMA proceeds[.]" *Id.* at 2. This was in line with Ms. Butler and Mr. Carter's manifestations to counsel for TPSB. Further, no party sought review of that order. In sum, we find that neither purpose of civil contempt is served here: TPSB has complied by using insurance and FEMA funds on their Hurricane Ida repairs, even if belatedly requesting court approval for them.   However, we remind all parties of their duty to timely comply with Court orders.  See Rec. Doc. 1661 at 3 (quoting *United States v. Fletcher*, *etc., et al,* 882 F.3d 151, 157 (5th Cir. 2018)) ("In evaluating unitary status, 'a court should give particular attention

to the school system's record of compliance.' **The record of good faith compliance must be 'consistent**.'") (Emphasis added).

New Orleans, Louisiana, this 23rd day of January, 2024

_____
SENIOR UNITED STATES DISTRICT JUDGE